# AMERICAN SMELTING AND REFINING COMPANY *v.* COLORADO *ex rel.* LINDSLEY.

### ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 143.   Argued December 20, 21, 1906.—Decided January 7, 1907.

Although a State may impose different liabilities on foreign corporations than those imposed on domestic corporations, a statute that foreign corporations pay a fee based on their capital stock for the privilege of entering the State and doing business therein and thereupon shall be subjected to all liabilities and restrictions of domestic corporations amounts to a contract with foreign corporations complying therewith that they will not be subjected during the period for which they are

admitted to greater liabilities than those imposed on domestic corporations, and a subsequent statute imposing higher annual license fees on foreign, than on domestic, corporations for the privilege of continuing to do business, is void as impairing the obligation of such contract as to those corporations which have paid the entrance tax and received permits to do business; nor can such a tax be justified under the power to alter, amend and repeal reserved by the State Constitution. So *held* as to Colorado Statutes of 1897 and 1902.

30 Colorado, 275, reversed.

THE writ of error in this case brings up for review the judgment of the Supreme Court of Colorado, which affirmed the judgment of the trial court forfeiting the right of the plaintiff in error, hereinafter called the corporation, to do business as a foreign corporation within the State until a certain tax therein adjudged to be due should be paid. The corporation refused to pay the tax, and thereupon, at the instance of the District Attorney and the Attorney General of the State, a proceeding in the nature of *quo warranto* against the corporation was commenced for the purpose of obtaining a forfeiture of the franchise of the corporation for its failure to pay the "Annual State Corporation License Tax." The defense set up that the tax was a violation of the Federal Constitution as impairing the obligation of a contract, and in other particulars named. Upon the trial the court found that there was due to the State of Colorado the sum of $4,000, being the amount of the annual tax due by reason of the statute, which was held valid. A decree was thereupon entered, forfeiting the right of the corporation to do business within the limits of the State of Colorado until the tax was paid, and it was "absolutely and wholly deprived of all rights and privileges within the State of Colorado, until such tax is paid." Upon appeal to the Supreme Court of the State this judgment was affirmed, and the corporation then sued out this writ of error.

The corporation was incorporated April 4, 1899, in New Jersey, and it is permitted by its articles of incorporation to do business in other States, and to carry on a general ore reduction, milling, mining and other business mentioned in such

articles. On April 28, 1899, it duly made application to the proper state authorities of Colorado for permission to enter and transact business in that State, under the laws thereof. At this time its capital stock was $65,000,000, divided into shares of the par value of $100 each. Subsequently, and on April 8, 1901, its capital stock was increased to $100,000,000, and the certificate of such increase was duly filed in Colorado. Section 499, (Mills Annotated Statutes of Colorado), after making provision for the performance of certain conditions by a foreign corporation entering the State, continued, "and such corporations shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers." Section 500 of the same statute provided that a foreign corporation must file in the office of the Secretary of State a copy of its charter, or, if incorporated under a general corporation law, a copy of such certificate of incorporation, and such general corporation law duly certified. Section 1 of chapter 51 of the Session Laws of Colorado for 1897 provided that every foreign corporation should pay to the Secretary of State, for the use of the State, a fee of $10 if the capital stock did not exceed $50,000. If in excess of that sum the corporation was to pay "the further sum of fifteen cents on each and every thousand dollars of such excess, and a like fee of fifteen cents on each thousand of the amount of each subsequent increase of stock. The said fee shall be due and payable upon the filing of certificate of incorporation, articles of association, or charter of said incorporation, joint stock company or association, in the office of the Secretary of State; and no such corporation, joint stock company or association shall have or exercise any corporate powers or be permitted to do any business in this State until the said fee shall have been paid; and the Secretary of State shall not file any certificate of incorporation, articles of association, charter or certificate of the increase of capital stock, or certify or give any certificate to

any such corporation, joint stock company or association, until said fee shall have been paid to him." By section 10 of chapter 52 of the Session Laws of Colorado for 1901 it was provided that no foreign corporation could "exercise any corporate powers or acquire or hold any real or personal property, or any franchises, rights or privileges, or do any business or prosecute. or defend in any suit, in this State until it shall have received from the Secretary of this State a certificate setting forth that full payment has been made by such corporation, joint stock company or association, of all fees and taxes prescribed by law to be paid to the Secretary of State, and every such corporation, joint stock company or association, shall pay to the Secretary of State for each such certificate, a fee of five dollars."

In accordance with the provisions of section 1 of the Laws of 1897, above mentioned, the corporation paid, upon filing its certificate, April 28, 1899, to the Secretary of State, for the use of the State, $9,792.50 on its original capitalization; and on May 17, 1901, the further sum of $5,250 upon its increase of capital stock to $100,000,000. Thereupon the Secretary of State issued a certificate, stating the filing of the proper papers with him, and further stating that "pursuant to the provisions of section 10 of said act (1901), I hereby certify that the said company has made full payment of all fees prescribed by law to be paid to the Secretary of State and due at the time of the issuing of this certificate, and is hereby authorized to exercise any corporate powers provided for by law." This was given under the hand and official seal of the Secretary of State, and was dated on the twenty-first day of May, 1901. There were at this time no other statutes providing for the payment of any charges, fees or taxes for coming into and doing business in the State of Colorado.

The corporation, upon entering the State in 1899 under its permission to enter and transact business therein, immediately commenced to erect a plant for the purpose of carrying on its business as a corporation, and before the commence-

ment of these proceedings it had invested for that purpose in the State sums amounting to more than $5,000,000. At the time the corporation was permitted to enter and carry on its business in the State the statute of Colorado provided that the term of life of corporations formed under the laws of that State should be twenty years. After the corporation had been doing business for some three years, and on March. 22, 1902, the legislature of Colorado passed an act in relation to taxes. Session Laws of Colorado for 1902, 43, 160, etc.

Section 64 of that act provided that all domestic corporations should thereafter and on or before the first day of May of each year, or at the time of obtaining such charter or certificate of incorporation, pay "an annual state corporation license tax;" to the Auditor of the State, of two cents upon each one thousand dollars of its capital stock.

Section 65 provided that every foreign corporation which had theretofore obtained "the right and privilege to transact and carry on business within the limits of the State of Colorado shall, in addition to the fees and taxes now provided for by law, and as a condition precedent to its right to do any business within the limits of this State, pay annually . . ." a state license tax of four cents upon each one thousand dollars of its capital stock.

Section 66 provided that every corporation which should fail to pay the tax provided for in sections 64 and 65 (*supra*) should forfeit its right to do business within the State until the tax was paid, and should be deprived of all rights and privileges, and the fact of such failure might be pleaded as an absolute defense to any and all actions, suits or proceedings, in law or in equity, brought or maintained by or on behalf of such corporations, in any court of competent jurisdiction within the limits of the State, until such tax was paid.

This corporation refused to pay, and the State, through its District Attorney and Attorney General, commenced this suit for the purpose of forfeiting its right to remain in that State, unless and until it paid the money under the statute of 1902.

*Mr. Thomas Thacher* and *Mr. Charles W. Waterman*, with whom *Mr. Joel F. Vaile* and *Mr. William W. Field* were on the brief, for plaintiff in error:

The law of 1902 is void because it would impair the obligation of the contract between the corporation and the State of Colorado which resulted from compliance by the former with the laws of the latter relating to foreign corporations, including the payment to the State in April, 1899, of $9,792.50 and the payment in May, 1901, of $5,250, on increase of stock.

A binding contract between the State and the corporation was thus made—a contract based upon a valuable and substantial consideration.

The intention of the Colorado law was to create substantial uniformity as to corporations, whether originally incorporated in or out of the State, which have complied with its conditions for acquiring the right of incorporation within its boundaries. *Iron Silver Mining Co.* v. *Cowie*, 31 Colorado, 540.

The franchise being substantially the same as the corporate franchise of a domestic corporation, the grant thereof, being made for a valuable consideration, is a contract within the protection of the Constitution. *Powers* v. *Detroit &c. Ry. Co.*, 201 U. S. 543.

The contract was that, in consideration of the payments made, the corporation should have the right to do business in the State as a corporation for twenty years, subject, of course, to the same liabilities, restrictions and duties as domestic corporations. *Home for Friendless* v. *Rouse*, 8 Wall. 430.

The law of 1902 must be condemned as impairing the obligation of such contract, unless it can be justified under the provision by which alone the grant is limited, that the corporation shall be subjected to the liabilities, restrictions and duties imposed on like domestic corporations.

It cannot escape condemnation upon the charge that it impairs the obligation of contract, by reference to the reservation of power to alter, revoke or annul corporate charters. Art. 15, § 3, Constitution of Colorado.

The power to alter or revoke is not absolute. It is materially qualified.

There is a wide distinction between the power to alter or annul here reserved, and the unrestricted reserved power in the laws and constitutions of many States. *Vicksburg* v. *Vicksburg Water Works Company*, 202 U. S. 453. As clearly as in that case the burden here sought to be imposed works injustice to the corporators of defendant. It compels them to pay again and to pay twice as much as like domestic corporations for the power to continue to carry on its business during the twenty years for which it received a franchise.

Nor can it escape such condemnation by reference to the taxing power of the State.

Liability to taxation is common to all persons, natural or corporate, with respect to their property in the State, except in case of special exemption. This company does not claim exemption from taxation; it merely denies the power of the State to make it buy again what it has already bought and paid for. The legislature may tax the franchise, as it may tax other property, but it cannot destroy the title thereto, or require it to be bought again as a condition of its further enjoyment. If land is sold by the State, the legislature may tax the land, but it cannot recall the title, or require a further payment to be made as a condition of its further use.

In respect to the meaning and effect of the law of 1902, this court will not be concluded by the opinion of the Supreme Court of Colorado. *Atch., Top. & S. F. Ry. Co.* v. *Matthews*, 174 U. S. 100; *Sterns* v. *Minnesota*, 179 U. S. 223; *Powers* v. *Detroit &c. Ry. Co.*, 201 U. S. 543.

*Mr. N. C. Miller,* Attorney General of the State of Colorado, for defendant in error:

The statutes under which this corporation was required to pay a fee for filing a certified copy of its articles of incorporation do not constitute a contract of exemption from any form

of taxation. Chap. 51, Session Laws of Colorado, 1897; Const. of Colorado, § 3, art. XV.

The right to do business is subject to taxation. If this is so, then the constitution prohibits the legislature from making any contract of exemption with corporations. The legislature cannot make a contract with a corporation, express or implied, that would exempt it from any of the ordinary forms of taxation. If the legislature, at the time of admitting this corporation, had not seen fit to tax the business carried on by the corporation, there is certainly no contract agreeing never to resort to this form of taxation.

A corporation claiming to be exempt from any form of taxation must show a clear and unequivocal provision to that effect, either in its charter or under the general law under which it is incorporated. *Ohio Trust Co.* v. *Debolt*, 16 How. 416; *Delaware R. R. Tax case*, 18 Wall. 206; *North. Missouri R. R. Co.* v. *Maguire*, 20 Wall. 46; *Metropolitan St. Ry. Co.* v. *New York*, 199 U. S. 1; *Wells* v. *Savannah*, 181 U. S. 531; *Bank* v. *Billings*, 4 Pet. 514; *Memphis Gas Co.* v. *Shelby Co.*, 109 U. S. 398.

The fee which a foreign corporation pays to file its articles in a State is analogous to the filing fee paid by a domestic corporation. Appellant's contention that this is a purchase price and that the State has sold something is purely an assumption and not a single authority is cited to sustain it. The case at bar is not like those corporation cases referred to by counsel where the State, impelled by the necessity of raising revenue, and expressly avowing its intention, has sold a franchise for the purpose of raising certain revenue, and inserted a clause of exemption from other taxation as an inducement to the buyer.

There is an obvious distinction between the charter of a corporation or the general statutes under which corporations file their articles, which are legislative in character and subject to alteration, amendment or repeal in pursuance of the Constitution and statutory provisions; and business contracts,

or franchises, entered into between corporations and the State or municipality. The latter is protected by all the provisions of the Federal Constitution, the same as a contract between two natural persons. But articles of incorporation filed under the constitutional provisions and statutes, such as we have cited in Colorado, are legislative in character and are subject to change from time to time. *Walla Walla* v. *Water Works Co.,* 172 U. S. 1; *Joplin* v. *Light Co.,* 191 U. S. 150.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

It is conceded that the corporation has paid all its indebtedness for taxes or otherwise to the State of Colorado, except the amount demanded under the above-mentioned law of 1902, and that it has obeyed all the laws of the State with that exception. It is urged, however, upon the part of the corporation that, by its admission into the State, with its right to do business therein by the payment of the amount of money required for such purpose under the then existing law, a contract between the State and itself was thereby made that it should be permitted to remain therein during the term of life which the State by law allowed to corporations created by it (which was twenty years), without being again subjected to further exactions of money for what it had once paid for, viz., the right to remain and transact business in that State. Undoubtedly, if the corporation violated the laws of the State properly applicable to it, or if otherwise it gave just cause for its expulsion, it could not insist upon such a contract as a defense.

It is also conceded on behalf of the corporation that it is not entitled to any exemption from taxes which the State of Colorado can properly impose upon persons or corporations within her borders.

Having obtained permission to enter the State and do business as above mentioned the question, aside from that of the

extent of the term, is whether any contract between the State and the corporation arose under these laws and the facts above mentioned.

In 1899, when this (foreign) corporation applied for a permit to enter and do business in the State, the laws of Colorado only granted such application on the payment of a certain fee named in the statute of 1897, which was payable upon filing its certificate of incorporation in the office of the Secretary of State of Colorado, and until that payment was made and the certificate filed no such corporation was permitted to have or exercise any corporate powers, nor was it permitted to do any business in the State. Section 30 of the act of 1901 provided that, upon payment of all taxes, etc., due under the law, the Secretary of State was to issue a certificate acknowledging the fact, for which the corporation was to pay a stated fee; and until the certificate was received from the Secretary of State by the corporation it should not exercise any corporate powers or do any business in the State, as provided for by the act of 1897.

The result of these statutes was that the foreign corporation, upon filing the proper papers and paying the statutory fees and obtaining the certificate to that effect from the Secretary of State, obtained the right to enter and do business in Colorado. The act of 1901 did not increase the amount of the exaction for entering and doing business in the State, but simply provided for a certificate, acknowledging payment, from the Secretary, and it imposed the payment of a small fee for such certificate. The right obtained was a right to enter the State and do business therein as a corporation. It was also subject by statute to the liabilities, restrictions and duties which were or might thereafter be imposed upon domestic corporations of like character. Domestic corporations at that time had the right to a corporate existence of twenty years.

These provisions of law, existing when the corporation applied for leave to enter the State, made the payment required

and received its permit, amounted to a contract that the foreign corporation so permitted to come in the State and do business therein, while subjected to all, should not be subjected to any greater liabilities, restrictions or duties than then were or thereafter might be imposed upon domestic corporations of like character.

A provision in a statute of this nature subjecting a foreign corporation to all the liabilities, etc., of a domestic one of like character must mean that it shall not be subjected to any greater liabilities than are imposed upon such domestic corporation. The power to impose different liabilities was with the State at the outset. It could make them greater or less than in case of a domestic corporation, or it could make them the same. Having the general power to do as it pleased, when it enacted that the foreign corporation upon coming in the State should be subjected to all the liabilities of domestic corporations, it amounted to the same thing as if the statute had said the foreign corporation should be subjected to the same liabilities. In other words the liabilities, restrictions and duties imposed upon domestic corporations constitute the measure and limit of the liabilities, restrictions and duties which might thereafter be imposed upon the corporation thus admitted to do business in the State. It was not a mere license to come in the State and do business therein upon payment of a sum named, liable to be revoked or the sum increased at the pleasure of the State, without further limitation. It was a clear contract that the liabilities, etc., should be the same as the domestic corporation, and the same treatment in that regard should be measured out to both. If it were desired to increase the liabilities of the foreign, it could only be done by increasing those of the domestic, corporation at the same time and to the same extent.

Such being the contract, how long was it to last? Only until the State chose to alter it? Or was it to last for some definite time, capable of being ascertained from the terms of the statutes as they then existed? It seems to us that the

only limitation imposed is the term for which the corporation would have the right to continue in the State as a corporation. One of the restrictions as to domestic corporations is that which limits its corporate life to twenty years, unless extended as provided by law. The same restriction applies to the foreign corporation. *Iron Silver &c. Co.* v. *Cowie,* 31 Colorado, 450. Counsel for the State concedes that the corporation was admitted for a period of twenty years, but subject to the power of the State to tax. During that time, therefore, the contract lasts. This is the only legitimate, and we think it is the necessary, implication arising from the statute.

This is not an exemption from taxation, it is simply a limitation of the power to tax beyond the rate of taxation imposed upon a domestic corporation. Instead of such a limitation the act of 1902, already referred to, imposes a tax or fee upon or exacts from the foreign corporation double the amount which is imposed upon or exacted from the domestic one. The latter is granted the right to continue to do business upon the annual payment of two cents upon each one thousand dollars of its capital stock, while the former must pay four cents for the same right. This cannot be done while the right to remain exists. It is a violation of the obligation of an existing valid contract. *Home of the Friendless* v. *Rouse,* 8 Wall. 430.

Nor is this a case where the power given by the state constitution to the general assembly to alter, amend or annul a charter is applicable. The act does not alter the charter or annul or amend it. It simply increases the taxation which up to the time of its enactment had been imposed on all foreign corporations doing business in the State.

A discussion as to the name or nature of the tax imposed by the act of 1902, or the former acts, is wholly unimportant with reference to the view we take of this case. After the payment of the money and the receipt of the permit to enter and do business in the State the corporation could not, as we

have said, be thereafter further taxed than was the domestic one. The tax on the latter under that act is the same in substance and effect as that upon the foreign corporation, but it is for only one-half thereof in amount. The domestic must pay "an annual state corporation license tax," while the foreign corporation must pay "a state license tax" annually. The means of enforcing payment are not different, and such means are stated in section 66 of the act of 1902.

Whatever be the name or nature of the tax, it must be measured in amount by the same rate as is provided for the domestic institution, and if the latter is not taxed in that way neither can the State thus tax the foreign corporation.

It is unnecessary to refer to the many cases cited by both parties hereto. Some of them refer to the question as to the nature of such a tax, while others decide, upon the facts appearing in them, whether there was a contract or not. As already stated, the name of the tax or its kind is not important so long as it is plain that the act of 1902 increases the liabilities of the foreign corporation over those which obtain in the case of the domestic. And in regard to the cases of contract, while the principle that a contract may arise from a legislative enactment has been reiterated times without number, it must always rest for its support in the particular case upon the construction to be given the act, and in this case we are not greatly aided by the former cases regarding taxation and legislative contract. We may, however, refer to the following out of many cases, regarding contracts as to taxation: *Miller* v. *The State*, 15 Wall. 478; *New York, Lake Erie & Western Railroad Co.* v. *Pennsylvania*, 153 U. S. 628; *Power, Auditor,* v. *Detroit &c. Railway Co.*, 201 U. S. 543.

Holding that the act of 1902 impaired the obligation of the contract existing between the corporation and the State, and is therefore void as to the corporation, it becomes unnecessary to decide the other questions discussed at the bar.

The judgment of the Supreme Court of Colorado is reversed

and the case remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*

The CHIEF JUSTICE, MR. JUSTICE HARLAN, MR. JUSTICE HOLMES and MR. JUSTICE MOODY dissented.