194 So.2d 527

Marion D. GRALAPP et al.

v.

MISSISSIPPI POWER COMPANY.

I Div. 328.

Supreme Court of Alabama.

Jan. 26, 1967.

Hamilton, Denniston, Butler & Riddick, Mobile, for appellants.

Inge, Twitty, Duffy & Prince, Mobile, and Martin, Balch, Bingham, Hawthorne & Williams, Birmingham, for appellee.

MERRILL, Justice.

This is a condemnation proceeding brought by Mississippi Power Company, appellee, to acquire rights of way and easements 125 feet in width on several parcels of land owned by appellants. From an or-

der denying condemnation in the probate court, appellee appealed to the Circuit Court of Mobile County. The matter was tried de novo without a jury and the application for order of condemnation was granted. From this order, the landowners have perfected the instant appeal.

The facts of the case are undisputed. Mississippi Power is one of four electrical power operating companies affiliated with and controlled by The Southern Company, a public utility holding company. It was organized under the general corporation laws of Maine on November 24, 1924, and qualified to do business in Alabama on December 7, 1962. It operates as a public utility in 23 southeast Mississippi counties, but not in Alabama.

The operating companies other than Mississippi Power affiliated with and controlled by The Southern Company are Alabama Power Company, Georgia Power Company and Gulf Power Company, operating respectively in States of Alabama, Georgia, and Florida. The Southern Company is the owner of all of the common stock of each of the operating companies. Transmission systems of each of the companies are interconnected with contiguous affiliated companies so that The Southern Company System is unified from the standpoint of transmission and generation. The four operating companies work under an agreement which provides for the co-ordinated operation of The Southern Company System as a power pool in order to more effectively use transmission lines, generating plants, and storage reservoirs. The System is devised so that electrical power will flow from an area where there is an excess of generating ability at a particular time as compared with load or demand for electricity toward an area where there is (or there is a tendency to be) a deficiency of generating capacity as compared with the existing load in such deficiency area.

It is inherent in the electric utility business that there are emergency occasions when there is need for an alternative source of electricity. These interconnecting lines and the system as detailed above provide these alternative sources. On other occasions one electric system may have an excess of power which has been produced at a relatively lower cost than the local system could produce it. As a result of these interconnections, Alabama is able to obtain such lower cost power when available, providing it with more economical operations and which have been a factor in reduced customer rates.

Another benefit from such interconnections is that it permits Alabama to reduce the size of its "reserve capacity." If an electric system is operated independent of any alternative source of power for use in the event of emergencies such as generation failure, then it must have a reserve capacity for availability in such emergencies equal to the size of its largest generating unit. By such interconnections, Alabama is able to obtain emergency power without the need for reserve capacity of such magnitude. By interconnections of the type provided by the line in question, the members of the unified or pooled operation thus pool their reserves and reduce the cost of their required power reserves. Such interconnections further provide for more efficient operations and an alternative source of power when existing Alabama transmission lines are disabled or interrupted from weather or other disturbances or at times of peak load.

The rights of way which Mississippi Power seeks to condemn in this proceeding are for a transmission line with a capacity of 230,000 volts running almost due west from Alabama Power Company's Barry Stream plant in northeast Mobile County to Wade, Mississippi, located just over the Mississippi line, where it will tie into Mississippi Power's transmission and distribution system. This transmission line, when completed, will be only one of several interconnections between the transmission systems of Alabama Power Company and Mississippi Power.

While power flows both ways, the evidence shows that Mississippi Power is substantially deficient in power. During the year 1964, over the several lines mentioned above, Alabama Power Company delivered Mississippi Power 547,874,000 KWH while the latter delivered to the former 34,056,-500 KWH, a better than 15 to 1 ratio. Based on this evidence, appellants contend that the line in question is being built for the benefit of electric consumers in the area of Mississippi served by Mississippi Power and not for the public benefit of Alabama citizens.

Appellants contend that Mississippi Power's engaging in business as an electric company and exercising the power of eminent domain in Alabama are ultra vires. It is argued that the appellee, due to its self-imposed charter limitations and the statutes of Maine, did not have the right of eminent domain in the state of its creation (Maine), and therefore, it cannot have that right elsewhere.

We feel that the case of Hagerla v. Mississippi River Power Company, 202 F. 776 (S.D.Iowa 1913) is a complete answer to appellants' argument. In that case, Mississippi River Power Company was a Maine corporation which was engaged in constructing a dam on the Mississippi River, a part of which was to be located in the State of Iowa. It was alleged therein that the Power Company did not have the power of eminent domain in Iowa. The court held that Mississippi River Power Company could exercise such power in Iowa and it was not material whether it had such power under the laws of Maine. The court said:

"The state of Iowa, through the proper officers, acting under a valid statute, admitted the Power Company, a corporation of Maine, to come into the state to transact the very business now questioned, namely, to construct the dam, power house, lock, and dry dock, and expend millions of dollars therefor. The state extended such invitation, granted the entrance into the state, and accepted the statutory license fee. Coming into the state, paying the fees, and obtaining permit from the Secretary of State is expressly authorized by section 1637 of the Iowa Code. Section 1638 provides:

" 'No foreign corporation which has not in good faith complied with the provisions of this chapter and taken out a permit shall possess the right to exercise the power of eminent domain * * * until it has so complied herewith and taken out such permit.'

"So that this Power Company, having complied with the statute, had all the rights to remain in Iowa, built its structure, at least from the Iowa shore to the thread of the stream, and was given the power of eminent domain, and to take lands by purchase. Now to drive it from the state and render useless such improvements and such expenditures would be in violation of the clause of the Constitution prohibiting the impairment of contracts. American Smelting & Refining Co. v. People of State of Colorado, 204 U.S. 103, 27 S.Ct. 198, 51 L.Ed. 393, 9 Ann.Cas. 978.

"Southern Illinois & M. Bridge Co. v. Stone, 174 Mo. 1, 73 S.W. 453, 63 L.R.A. 301, holds that a foreign corporation without the power of eminent domain in the state of its creation may exercise such power in the state where the property is situated, if the statutes of such state vest the power in a foreign corporation. So that it is not material whether the constructing company under the laws of Illinois or Maine have such power."

Appellants next argue that Mississippi Power Company can have no right of eminent domain in this case because the property sought to be acquired by it will not be devoted to a recognized public use. The evidence reveals that Mississippi Power does not function in Alabama as a public utility and that it has no intention of do-

ing so. Nor is Mississippi Power subject to the jurisdiction of the Alabama Public Service Commission. In view of this, coupled with the fact that the right of Alabama Power Company to receive power transmitted over the proposed line will occur only by virtue of a contractual arrangement between the two companies, the appellants argue that the public in Alabama does not have any legal right to participate in the use of or benefit from the proposed project.

Of course, it is a fundamental principle in the law of eminent domain that private property may not be condemned unless it is to be subjected to a recognized public use, affording benefits which are not vague, indefinite or restrictive. In re Opinion of the Justices, 254 Ala. 343, 48 So.2d 757; Alabama Constitution 1901, § 23. In Columbus Water Works Co. v. Long et al., 121 Ala. 245, 25 So. 702, the court said:

" * * * It is not the instrumentality employed for operating the public use, but the use itself, that satisfies the constitution. *The fact that the use is public and the public may have the privilege of enjoying it, is the controlling principle. * * *.*" (Emphasis supplied)

The evidence in the instant case established that electricity would flow in both directions along the line sought to be constructed. We cannot agree that there would be no benefits to the public in Alabama from the construction and use of this power line.

Appellants contend further that one of the recognized tests of public use is that the contemplated use be subject to regulation by the established agencies of the state in which such use is to be made. We find no fault in that statement; however, we do not think it imperative that the Alabama Public Service Commission have regulatory powers over the operation of the line in question. The uncontradicted testimony of witnesses established that the public in Alabama would be benefited. In this respect, the right to condemn is satisfied. .

Then, too, the right to condemn in this case cannot be denied because public uses in another state would be promoted also. We quote again from Columbus Water Works Co. Case, 121 Ala. 245, 25 So. 702, as follows:

"It is equally clear, that this right is not to be denied where public uses are to be subserved in the state granting condemnation, because in connection therewith, public uses in another state may be likewise promoted. While a state will take care to use this power for the benefit of its own people, it will not refuse to exercise it for such purpose, because the inhabitants of a neighboring state may incidentally partake of the fruits of its exercise. Such refusal would violate the principles of a just public policy, and the neighborly comity which should exist between states."

We are convinced that appellee has shown it has the right to condemn the lands in question with reference to the required public use or public benefit.

Appellants argue that the circuit court erred in overruling their demurrer to the application for condemnation. It is the law of Alabama that an application for condemnation which complies with the provisions of Tit. 19, § 3, Code 1940, is sufficient as against demurrer. Pappas v. Alabama Power Company, 270 Ala. 472, 119 So.2d 899; Lipscomb v. Bessemer Board of Education, 258 Ala. 47, 61 So.2d 112; Rountree Farm Co. v. Morgan County, 249 Ala. 472, 31 So.2d 346. It suffices to say that the instant application contains all the elements required by this Code provision necessary to state a cause of action for condemnation.

It is contended by appellants that the court below also erred in sustaining appellee's demurrer to Plea No. 7. By this plea, appellants took the position that a necessity certificate from the Alabama Public Service Commission under Tit. 48, § 332, Code 1940, was an essential prerequisite to

condemnation and was not obtained by Mississippi Power Company in this case. There is no merit in appellants' argument because § 332 does not deal with condemnation at all.

Finally, appellants have argued throughout their briefs that there is no specific statutory provision which gives Mississippi Power Company the right of eminent domain in Alabama. We list the following sections of our statutes which show the plain legislative intent to give foreign corporations or electric companies which have qualified to do business in this State the same right of eminent domain as is given similar domestic companies: Tit. 10, § 71; Sections 87 and 88 of Act No. 414, the "Alabama Business Corporation Act," Acts of Alabama 1959, p. 1055, listed in the 1958 Recompiled Code under Tit. 10, § 21(87) and 21(88) ; Act No. 434, Acts of Alabama 1953, p. 540, listed in the 1958 Recompiled Code as Tit. 48, § 336(1). (The mere fact that the Michie Company chose to list Act No. 434 under Tit. 48, which deals with the Alabama Public Service Commission and public utilities regulated by it, does not limit Act No. 434 to corporations regulated by the Commission. We think the act could more properly have been listed under Tit. 10 (corporations), especially since "Every electric public utility corporation" in Alabama is not subject to the Commission.)

As already stated, Mississippi Power Company is a foreign corporation and was qualified to do business in Alabama. The quoted statutes clearly give it the right of eminent domain.

In Berry v. Alabama Power Co., 257 Ala. 654, 60 So.2d 681, we said:

"As stated, the matter of authorizing condemnation of rights of way by eminent domain is the prerogative of the law-making body. And when the power has been undoubtedly conferred by statute, the statute must be reasonably construed, to the end that the general good shall not be hampered or embarrassed by a narrow or technical interpretation. Lewis, Eminent, Domain, § 390, p. 711."

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.