WIGGINS, Justice (concurring in part and dissenting in part).
I dissent from the majority's conclusion that the use of eminent domain does not violate the Iowa Constitution. I agree with the majority that incidental economic benefits alone are not enough for a taking to qualify as "for public use" under article I, section 18. However, I disagree that the Dakota Access pipeline fits within the "common carrier exception" for purposes of the Iowa Constitution. I also find fault in Dakota Access's use of eminent domain because it is unrelated to the purpose of the applicable eminent-domain-authorizing statute.
One way a taking complies with article I, section 18 's public use requirement is where "the sovereign ... transfer[s] private property to private parties, often common carries, who make the property available for the public's use." Kelo v. City of New London , 545 U.S. 469, 497-98, 125 S. Ct. 2655, 2673, 162 L.Ed.2d 439 (2005) (O'Connor, J., dissenting). Inherent in this "use-by-the-public" method of compliance is that the condemning sovereign's public be able to use the taken property. Various courts have recognized that
[t]he sovereign's power of eminent domain, whether exercised by it or delegated to another, is limited to the sphere of its control and within the jurisdiction of the sovereign. A state's power exists only within its territorial limits for the use and benefit of the people within the state. Thus, property in one state cannot be condemned for the sole purpose of serving a public use in another state.
Mountain Valley Pipeline, LLC v. McCurdy , 238 W.Va. 200, 793 S.E.2d 850, 862 (2016) (quoting Clark v. Gulf Power Co. , 198 So. 2d 368, 371 (Fla. Dist. Ct. App. 1967) ); accord, e.g. , Adams v. Greenwich Water Co. , 138 Conn. 205, 83 A.2d 177, 182 (1951) (noting "no state is permitted to *854 exercise or authorize the exercise of the power of eminent domain except for a public use within its own borders" and collecting cases); Square Butte Elec. Coop. v. Hilken , 244 N.W.2d 519, 525 (N.D. 1976) ("[A]lthough other states may also be benefited, the public in the state which authorizes the taking must derive a substantial and direct benefit ..., something greater than an indirect advantage ...."); see Gralapp v. Miss. Power Co. , 280 Ala. 368, 194 So. 2d 527, 531 (1967).
Recently, other states have relied on that principle when considering whether a pipeline running across the state constituted a public use. See Mountain Valley Pipeline , 793 S.E.2d at 860-62 (West Virginia high court finding a natural gas pipeline was not for a public use because West Virginians could not use and did not directly benefit from the pipeline or the natural gas it was to transport); see also Bluegrass Pipeline Co. v. Kentuckians United to Restrain Eminent Domain, Inc. , 478 S.W.3d 386, 392 (Ky. Ct. App. 2015) (finding pipeline was not "in the public service of Kentucky" because the product in the pipeline was being transported to a facility in the Gulf of Mexico and not reaching Kentucky consumers); cf. In re Condemnation by Sunoco Pipeline, L.P. , 143 A.3d 1000, 1019 (Pa. Commw. Ct. 2016) (upholding finding of public benefit of pipeline because the intrastate pipeline would enhance delivery options for natural gas and liquids in Pennsylvania ).
Additionally, I would find Dakota Access's takings do not qualify as "for public use" because the primary purposes of the takings and their incidental economic and public safety benefits are unrelated to the purpose of the statute authorizing the use of eminent domain.
In this case, the statute authorizing the use of eminent domain is not Iowa Code chapter 6A but rather chapter 479B. The purpose of chapter 479B is "to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline." Iowa Code § 479B.1 (2016).
The primary purported purposes of Dakota Access's pipeline are (1) so a private business can build a private pipeline to "transport crude oil from sources in North Dakota to a hub in Illinois" and (2) to answer the oil industry's desire for a pipeline. However, the purpose of chapter 479B is neither to facilitate private transportation of crude oil (or other hazardous liquids) nor to acquiesce to a particular industry's desire for a particular method of transporting its product. Thus, the primary purported purposes of the pipeline are unrelated to the purpose of exercising eminent domain as contemplated in chapter 479B.
Likewise, the Iowa Utility Board's (IUB) finding that the pipeline promotes public safety does not correspond with the purpose of chapter 479B. The IUB found the pipeline promotes public safety because the risk of an oil spill is lower when the oil is transported by pipeline than when it is transported by rail. But the public safety purpose of chapter 479B is not to lower the risk of damages resulting from the transportation of oil generally. It is to protect against damages resulting "from the construction, operation, or maintenance" of an oil pipeline. Id.
In sum, I conclude the Dakota Access pipeline does not fit within the common carrier exception for purposes of the Iowa Constitution because the Iowa public cannot use and does not derive a direct benefit from it. Further, even taking into account the purported incidental and secondary benefits to Iowans, the use of eminent domain in this case does not accord with the purpose for which eminent *855 domain may be exercised as stated in the pertinent statute authorizing the use of eminent domain. I would hold the Dakota Access's takings violate article I, section 18 of the Iowa Constitution.
Appel, J., joins this concurrence in part and dissent in part.