(77 South. 835)

McDONALD v. WARD et al. (6 Div. 579.)

(Supreme Court of Alabama. Jan. 17, 1918.)

1. MUNICIPAL CORPORATIONS ☞272—LIGHT PLANT—INCIDENTAL AUTHORITY.

A municipal corporation authorized to own, operate, and maintain an electric lighting plant has implied authority as incidental to the operation of the plant to utilize the excess electric current by disposing of the same for operation of electrical driven machinery, so long as that use does not interfere with the main purpose of furnishing light.

2. MUNICIPAL CORPORATIONS ☞911—BONDS —ELECTRIC LIGHTING PLANT—VALIDITY.

Acts 1915, p. 110, amending Acts 1909, p. 188, § 2, dealing with the holding of elections by municipalities for the purpose of issuing bonds, provides in subsection 11 for the issuance of bonds for erecting and purchasing plants for supplying lights to the municipality and to the inhabitants thereon, and for the purpose of repairing, extending, and enlarging the same. Subsection 21 provides for the issuance of bonds for the payment of any deficiency in the revenues of any municipal corporation for the funding of floating debts, and for such other purposes as may be authorized by law. Code 1907, § 1459, declares that any city or town that may hereafter construct or purchase an electric light plant or other light and power plant, or extend and enlarge a plant already owned, may mortgage the property to secure bonds. *Held*, that an issue of bonds by municipality for the erection, equipment, and enlargement of a lighting plant could not be enjoined, because it was proposed that the municipality should, as incidental to the operation of the lighting plant, dispose of current for power purposes.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill in equity by T. C. McDonald against George B. Ward and others. From a decree dismissing the bill, complainant appeals. Affirmed.

Bill filed by appellant, as a resident taxpayer of the city of Birmingham, against the commissioners of said city, seeking injunctive relief against the issuance of bonds in the sum of $500,000 by the city, for the purpose of erecting and equipping an electric light and power plant to supply electric lights and power to the city of Birmingham and the inhabitants thereof; said bonds to bear interest at the rate of 4½ per cent. per annum.

The bill shows the adoption of an ordinance by the city calling for an election to be held for the determination by ballot of a proposition to issue bonds for the above-named purposes. On June 5, 1916, the election was held, and a majority vote cast in favor of the issuance of said bonds. The bill also alleges that there is no law au-thorizing the city of Birmingham to call an election for the purpose of determining whether or not bonds shall be issued for the purchase or acquisition of a plant for the purpose of supplying electric lights and electric power for the city of Birmingham and its inhabitants; and that there is no express or implied warrant of law for the issuance of the bonds of the city for these purposes.

The answer admits the passage of the ordinance, and the election held, together with the result thereof. But it avers that the power or right to furnish lights to the city of Birmingham and its inhabitants carries with it the incidental right to obtain the full use and enjoyment of the plant by which the energy or power for the electric lights is to be manufactured; that appellee is now operating an electric light and electric power plant in the city of Birmingham, which electric light and power plant was constructed by the town of North Birmingham prior to its inclusion in the corporate limits of the city of Birmingham. It is further averred that the economic operation of its plant cannot be obtained by furnishing the city and its inhabitants electric lights to the exclusion of electric power for other purposes; that electric lights are in the main required only at night, and then for only a short period, and while during the remainder of the 24 hours of the day, the operation of the plant, if confined to furnish lights only, would result in great waste of electric power and a serious economic loss; that during the day there is very large demand for electric power for the operation of electrically driven machinery used in the various industries in and around the city, and owned by the inhabitants thereof, as well as machinery and plants operated and owned by the city of Birmingham, including pumping machinery used in waterworks plants; that the manufacture and utilization of electric power is not the main purpose of the plant, but is incidental thereto; and that the plant contemplated to be erected is a mere extension or enlargement of the system which the city of Birmingham now has in operation, wherein it manufactures electric power, some of which is converted into electric lights, and some of which is used in driving machinery.

The answer further avers that there is no distinction between an electric light plant and an electric power plant; that it is scientifically impossible to operate an electric light plant without at the same time, and by the same operation, necessarily operating an electric power plant also. It is further averred that electric lights cannot be produced without first producing electric power; and that, therefore, the city should not be enjoined from issuing bonds for the erection of a power plant for the reason that they can-

---

not build a light plant without first building a power plant.

The answer also sets up legislative authority under which the power is derived to issue the bonds in question. There is an agreed statement of facts, as well as the testimony of one Kendrick and one Lide, which supports the averments of the answer.

The cause was submitted upon the bill and answer, the agreed statement of facts, and the testimony of these two witnesses, for final decree. Upon consideration thereof, it was decreed that the complainant was not entitled to relief, and the bill was therefore dismissed. From this decree the complainant prosecutes this appeal.

Percy, Benners & Burr, of Birmingham, for appellant. M. M. Ullman and Cabaniss & Bowie, all of Birmingham, for appellees.

GARDNER, J. [1] By Acts 1915, p. 110, subdivision 11, § 2, of the act of August 26, 1909 (Laws 1909, p. 188), which dealt with the holding of elections by municipal corporations for the purpose of obtaining authority for the issuance of bonds for public purposes therein defined, was amended. Among the purposes enumerated in said amendatory act of 1915 was the following:

Subsection 11: "For erecting and purchasing plants for supplying light to the municipality or to the inhabitants thereof, and for the purpose of repairing, extending and enlarging the same."

Counsel for appellant insist that municipal bonds may be issued only "for erecting and purchasing lighting plants for supplying light to the municipality, or to the inhabitants thereof," but cannot be issued for the purpose of "erecting and equipping an electric light and electric power plant to supply electric lights and electric power to the city of Birmingham and the inhabitants thereof," as was the language of the ordinance.

It is first insisted on the part of the city that an electric light and an electric power plant are one and the same thing; that electric lights cannot be produced without producing electric power, and that it is practically impossible to operate an electric light plant without at the same time, by the same operation, necessarily operating an electric power plant; that the primary purpose of the electric lighting plant is to furnish electric lights for the streets of the city, and other municipal purposes, and to furnish lights to the inhabitants of the city, but that for these purposes only a few hours of the day are required, and while during the remainder of the day, the plant, if confined to the manufacture of energy for electric lights to the exclusion of any other mechanical form of utilization of its electricity, necessarily manufactured by the operation of said plant, would be inefficient and conducted at a serious economic loss. It is also contended that, in the operation of an electric lighting plant, the city is also necessarily oper-

ating an electric power plant, and, in making use of the surplus electric power in the operation of electrically driven machinery—which the city is now doing—as incidental to the operation of the lighting plant, the city is acting entirely within its legitimate scope. In State v. City of Eau Claire, 40 Wis. 533, it was held that a city having legislative authority to erect a dam for the purpose of waterworks might lawfully lease for private purposes any excess of water not required for its waterworks. In Pike's Peak Power Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A. 333, the Circuit Court of Appeals, commenting upon this holding, said:

"This is a just and reasonable rule. It is a rule inconsistent with no principle" or rule "of law, or of equity, and in accord with that common sense and common business practice which recognized as a public good the growth of two blades of grass where but one grew before, and the conversion of waste to use."

In Overall v. Madisonville, 125 Ky. 684, 102 S. W. 278, 12 L. R. A. (N. S.) 433, it was held that a municipal corporation having authority to own a plant for lighting its streets may sell the surplus of its products to its inhabitants; the court saying:

"If the municipality may build and operate its own light plant for that purpose, and it may, it ought to be permitted to sell the surplus of its product as it would be permitted to sell any of the horses bought for its fire department when they were no longer needed in the public service, or to sell anything else it rightfully had, but had no further use for. So it is now held that they may sell such surplus property or products. * * * The main feature in each is a clearly governmental power and duty. The other or added feature is incidental, and allowed as a sensible and necessary concomitant of the main purpose. We think the city had the power to install a light plant to furnish public lighting, and incidentally, as is proposed, light to its inhabitants."

Speaking to like effect the Supreme Court of Vermont in Bates v. Bassett, 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166, said:

"The town has no right as a primary purpose to erect buildings to rent, but if in erection of its hall for its proper municipal uses, it conceives that it will lighten its burdens to rent part of its building whereby an income is gained, no sound reason is suggested why it may not do so. The true distinction drawn in the authorities is this: If the primary object of a public expenditure is to subserve a public municipal purpose the expenditure is legal, notwithstanding it also involves as an incident an expense which standing alone would not be lawful."

The following authorities also support this proposition: State ex rel. Water Co. v. Superior Court, 70 Wash. 486, 127 Pac. 104; Tacoma v. Nisqually Power Co., 57 Wash. 420, 107 Pac. 199; Chandler v. City of Seattle, 80 Wash. 154, 141 Pac. 331; Dillon, Municipal Corporations (5th Ed.) § 1300; Crouch v. City of McKinney, 47 Tex. Civ. App. 54, 104 S. W. 518; Jacksonville Electric Lt. Co. v. City of Jacksonville, 36 Fla. 229, 18 South. 677, 30 L. R. A. 540, 51 Am. St. Rep. 24. We therefore think it quite clear that a city authorized to own, maintain, and operate an electric lighting plant would have the im-

plied power, as incidental to the operation of said plant, to utilize the excess electric power for the purpose of furnishing such power in operating electrically driven machinery, so long as such use does not interfere with the main purpose of furnishing light for the city and its inhabitants.

[2] As we read the brief of counsel for appellant, the soundness of the above authorities is not seriously questioned; but the insistence seems to be that the language of subsection 11 of the act of 1915, above quoted, restricts the use of lighting plants to supplying lights only to the municipality or the inhabitants thereof. We are of the opinion that this construction of the language used is too narrow and somewhat strained. When viewed in the light of the principles announced in the foregoing authorities, the expression "for the municipality, or the inhabitants thereof," may well be construed as merely indicating the main purpose of the electric lighting plant; and the use of the excess power as incidental thereto would very consistently follow as necessarily implied. There are, however, other provisions of this same act, as well as other acts of the Legislature, which add force to this construction of the above language. The second purpose mentioned in this act is as follows:

"For extending, enlarging, improving, repairing or securing the more complete use of and enjoyment of any building or improvement owned, purchased or constructed by the municipality, for equipping and furnishing the same."

The answer discloses, and the facts are without dispute, that the city is now operating an electric lighting plant for the purpose of supplying electric lights to the municipality, and its inhabitants, and that, in order to secure the more complete economic use and enjoyment of the improvements which it now has, it is necessary to construct or so enlarge the plant not only for supplying electric lights, but also electric power. By the very language of subsection 11 of the act, the city is directly granted the power to issue bonds for the purpose of building an electric lighting plant; and by subsection 2 the right is given to issue bonds to secure the more complete enjoyment of any improvement owned by the municipality, which would include, of course, this electric lighting plant. It is disclosed without dispute that, in order to secure the more complete enjoyment of the light plant, it is necessary to make use of the excess electric power which is generated by the operation of the plant. Subsection 21 of the act provides for the issuance of bonds for the payment of any deficiencies in the revenues of any municipal corporation for the funding of floating debts, and for such other purposes as may be authorized by law or by the charter of any municipal corporation. By section 1459 of the Code it is provided:

"Any city or town of the state of Alabama that may hereafter construct or purchase" an "electric light plant, or other light and power plant, or extend or enlarge a * * * light and power plant, then owned by such city or town, may, by its board of mayor and aldermen, or other governing body of such city or town, execute a mortgage on * * * the * * * light and power plant, * * * constructed by such city or town, to secure the bonds, indebtedness, and interest on such bonds and indebtedness created in the purchase, construction, extension or enlargement of such * * * light and power plant," etc.

It is thus seen by the above provisions of said section that the cities were given the right to secure bonds—issued for the purposes therein named—and of executing a mortgage on the municipal improvement. It is also noted that the language therein used would indicate that by "an electric light plant" was intended to be embraced what is referred to as "an electric light and power plant," and that the expression therein used referred to one and the same character of municipal improvements. It is shown in this case by the agreed statement of facts, as well as by the proof, that an electric light and power plant is in theory and in fact identical with an electric light plant. We are of the opinion that the language used in subsection 11, upon which counsel for appellant base their right to injunctive relief, in the light of the principles of law herein stated, and the other provisions of our statutes above noted, is properly construed as authorizing the erection of an electric light and power plant.

We have seen that in the operation of an electric lighting plant the city would have the implied power, as incidental thereto, to utilize the excess of the electric power in furnishing the same in the operation of electrically driven machinery, and we think it would be manifestly unreasonable to say that the lawmaking power intended by the language used to restrict the use of the electric power in such a manner that the excess must go to waste, and that the city must operate the plant at an economic loss. In the case of Thomason v. Court of Co. Com'rs et al., 184 Ala. 28, 63 South. 87, the court had for consideration a statutory provision authorizing an election to be called for determination by the voters as to whether or not bonds for the county should be issued for the purpose of "constructing * * * public roads." In ordering the election, the court of county commissioners called the election for the determination by the voters of the county of whether or not bonds should be issued for the purpose of "constructing, improving, and repairing the public roads of the county." It was there held that the order of the commissioners' court was within the meaning of the language of the act, when properly and reasonably construed; the court saying:

"All statutes should be construed with reference to the manifest purpose and intention of the lawmakers in their enactment, and such manifest purposes should not be defeated by a narrow construction based upon nice distinctions in the meaning of words. The word of the statute, 'constructing,' is used in the order for holding an election and in the publication of notice of the election, and the inclusion of the words 'repairing' and 'improving,' which in a sense are

embraced in the word 'constructing,' giving the statute in its objects and purposes a broad and liberal construction, should not vitiate the election."

So, we think it is manifest that, in the instant case, the lawmaking power did not intend to deny to the municipalities the full use and enjoyment of its improvements, for which the city is authorized to issue bonds, and which, as above shown, in legal contemplation, is incidental to the granting of power for a purely governmental function.

We therefore conclude that the ordinance was valid, that the city was acting within the scope of its authority, and that the court below properly decreed in dismissing the bill.

The decree will be here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.