(93 South. 16)

**PILCHER v. CITY OF DOTHAN et al.**
**(4 Div. 976, 977.)**

(Supreme Court of Alabama. May 4, 1922.)

**1. Municipal corporations ⬥⟹321(1)—Courts cannot interfere with exercise of power to provide water system, except for fraud or palpable abuse of discretion.**

The power of municipalities under Code 1907, §§ 1260–1262, and Acts Sp. Sess. 1921, pp. 6–8, to provide water systems, imports the discretion requisite to its exercise, with which the courts cannot interfere, except for fraud or palpable abuse of such discretion.

**2. Municipal corporations ⬥⟹63(1)—In determining propriety of proposal for electoral approval of bond issue, city acts in proprietary capacity.**

In determining the wisdom, propriety, and contractual elements of a proposal for electoral approval of a bond issue for an authorized purpose, the municipal government acts in a proprietary, not a legislative, capacity.

**3. Municipal corporations ⬥⟹63(1) — Courts cannot inquire into motives of members of municipal government, even if acting in proprietary capacity.**

Even when a municipal government acts in a proprietary and not a legislative capacity, the courts cannot inquire into the motives of its members for the purpose of determining the validity of its acts, except in cases of corruption.

**4. Evidence ⬥⟹158(15)—Municipal governmental action, of which record must be made, cannot be shown by parol.**

Municipal governmental action, of which a record is required to be made, cannot be shown by parol; the records themselves, unless lost or destroyed, being the best and only evidence of such action.

**5. Evidence ⬥⟹151(1)—Members of municipal governing body cannot testify as to purposes or motives inducing participation in discretionary acts.**

Members of a municipal governmental body, whose exercise of discretion is attacked, are not competent to testify in definition or explanation of the purposes or motives inducing their participation in the action complained of.

**6. Municipal corporations ⬥⟹63(1)—Mistake of judgment in exercise of discretionary power not equivalent to "bad faith" or "fraud."**

Error or mistake of judgment in the exercise of a discretionary power is not equivalent to "bad faith" or "fraud," synonymous terms.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bad Faith; Fraud.]

**7. Municipal corporations ⬥⟹63(1)—Abuse of discretion, justifying interference with discretionary power, implies perversity of will, passion, or moral delinquency.**

The abuse of discretion, justifying interference with the exercise of a discretionary power, implies not merely an error of judgment, but perversity of will, passion, or moral delinquency.

**8. Municipal corporations ⬥⟹321(1)—Magnitude or cost of proposed improvement does not impeach city's good faith.**

The mere magnitude or cost of an authorized municipal improvement, such as a hydroelectric plant, the value of which is substantially equivalent to the cost, for the generation and transmission of electric power for the operation of a waterworks plant, does not impeach the good faith of the city government, the power of which, with respect to such matters, is restricted only by the debt limit provisions of Const. 1901, § 225, though a fraudulent or grossly abusive exercise of such discretion may be thwarted by the courts.

**9. Evidence ⬥⟹12—Judicial notice of city's increase in population and material growth.**

Judicial notice is taken that the city of Dothan has rapidly increased in population and material growth.

**10. Municipal corporations ⬥⟹321(2) — No abuse of discretion in determination to construct hydroelectric plant capable of generating much more energy than needed for present.**

The government of the city of Dothan, which has already rapidly increased in population and material growth, did not act in bad faith or abuse its discretion in the matter of providing better service or more economical operation of its water system, or in reasonably anticipating future requirements by determining to construct a hydroelectric plant capable of generating 4,000 horse power for the operation of its water plant, though the excess over present needs was great.

**11. Municipal corporations ⬥⟹321(2)—Generation of large surplus electrical energy for private consumption does not indicate abuse of discretion in authorizing construction of hydroelectric plant.**

That a large surplus energy, when measured by present municipal needs, will be created by the construction of a hydroelectric plant for the generation of electrical power to operate a municipal water plant, does not justify the imputation of bad faith or abuse of discretion, because the incidental excess product may be sold for private consumption, though such excess, if great enough, may afford indicia of such abuse or bad faith.

---

⬥⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Municipal corporations** ⬤�científic**907—Constitutional limitation on use of proceeds of municipal obligations held inapplicable to creation of hydroelectric plant.**

The requirement of Const. 1901, § 225, that the "proceeds of all obligations issued as herein provided" shall be used for no other purpose than that for which they were issued, is a limitation only on the power of disbursement or application of the proceeds of such obligations, and not on the power to create obligations for an authorized purpose, such as the construction of a hydroelectric plant for the generation of power to supply a municipal waterworks system.

**13. Evidence** ⬤➔**83(2)—Presumed that city authorities intended to observe Constitution and law in good faith in authorizing municipal improvement.**

It will be presumed that a city government, in authorizing the construction of a hydroelectric plant for the generation of power to operate a waterworks system and issuing bonds to provide funds, intends to observe in good faith the Constitution and laws of the state, and bad faith cannot be imputed without substantial reason.

**14. Injunction** ⬤➔**144—Bill without equity will not support temporary injunction.**

A bill without equity will not support or invite the issuance of a temporary injunction.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Suit by B. R. Pilcher against the City of Dothan and others to enjoin the issuance and sale of bonds and the use of the funds arising therefrom. From a decree sustaining demurrers to the bill, and refusing a temporary injunction, complainant appeals. Affirmed.

These appeals are from rulings on the same original bill, viz. one from the decree sustaining appellees' demurrer to appellant's bill. and the other from an order denying the temporary injunction prayed therein. The appellant, complainant, is a citizen and taxpayer in the city of Dothan, and as such he, in his own behalf and along with any others likewise interested who may join, seeks to restrain the municipal authorities of Dothan from proceeding, as they intend and avow, to issue and sell bonds of the municipality, in the sum of $750,000, to provide funds wherewith to construct an hydroelectric plant at Chalker's Bluff, on the Choctawhatchee river, in Geneva county, and transmission lines to convey electric power there generated to the city of Dothan, "for the purpose," the ordinance recites, "of providing and constructing a waterworks plant to pump, provide, and deliver water in and to the city of Dothan, for the uses of said city and the inhabitants thereof, and to generate and transmit electricity for such purposes."

The city of Dothan owns and operates electric light and waterworks systems. The power to operate these systems is furnished initially by a steam plant. The steam plant generates electricity, and the current therefrom is applied, in part, to operate the pumps and distribute water for municipal, manufacturing, and domestic purposes, "which [water] plant does and will produce good and wholesome water to supply and take care of the needs of the said city of Dothan and the citizens thereof." The electric current, in excess of that devoted to the water system, is applied to municipal, manufacturing, and domestic purposes. It is averred in the bill that the maximum horse power required to operate efficiently the present water system is 550 horse power of electricity; that the horse power required under ordinary conditions for operating the waterworks for all purposes is 325; "that even after said waterworks system has been extended, enlarged, and developed in a way and manner required, necessary, or convenient for all future needs of the said city of Dothan for many years to come, that it will require and said waterworks system will consume at most only 800 or 900 horse power to maintain, operate, supply, and deliver said water to the said city of Dothan and to the inhabitants thereof;" and that the present steam plant is capable of developing 1,100 horse power, a maximum power adequate to furnish power both for the water plant and the electric light plant operated by the city.

It is further averred in the bill that the electric energy intended to be developed at the hydroelectric plant at Chalker's Bluff, through the expenditure of the proceeds from the sale of the bonds in question, will be 4,000 horse power; and that with additional mechanism to be later installed in connection with the plant now contemplated 8,000 horse power would be developed. It is also averred that the excess electric energy, viz. 3,500 horse power, if the presently contemplated hydroelectric plant is alone constructed, and about 7,500 horse power, if the additional mechanism is later installed, will be devoted to municipal purposes, and the remainder sold to private consumers. It is also averred that the proportion of power thus generated to be devoted to the water system will be insignificant in comparison with the proportion sold for commercial purposes, the respective proportions being alleged to be as one-eighth is to seven-eighths—an arithmetical deduction that does not, however, appear to be justified by the facts averred, except in the event 8,000 horse power is generated through the additional mechanism, which object is not now proposed in the ordinance to provide for the sale of the bonds in question.

Notwithstanding the ordinance authorizing the election for the bonds in question does not indicate, in any way, that the proceeds of

---

the proposed issue will be devoted to any other purpose than to operate the waterworks system, the bill questions the good faith of the city government in the premises by these averments:

"Complainant further avers that the large and main expense in erecting the whole hydroelectric development plant and system, including said dam and disbursement of said electricity for lighting and manufacturing purposes in Dothan, is and will be for the purpose and with the intention of constructing and providing and maintaining an electric light plant, so that said electricity can and will be furnished to the inhabitants thereof, electricity for lighting purposes and for manufacturing and commercial purposes, and that such will be the result and effect of the erection of said hydroelectric plant. Wherefore complainant alleges that the main, chief, and major object, purpose, and intention of said mayor, city council, and city of Dothan in erecting, constructing, and providing or acquiring said hydroelectric plant, and the effect thereof, is and will be for the purpose of furnishing to the said city of Dothan and the inhabitants thereof electricity for lighting purposes and power to drive machinery for commercial purposes, and is not for the primary, major, and chief purpose of acquiring, providing, and constructing waterworks, or for providing electricity to operate said waterworks and pump said water. Complainant further avers that the said proposed hydroelectric plant is and will be used incidentally and to the small degree as hereinbefore mentioned for the purpose of constructing, providing, or acquiring electricity with which to operate said waterworks system."

So far as presently material, section 225 of the Constitution provides:

"All towns and cities having a population of six thousand or more * * * are hereby authorized to become indebted in an amount, including present indebtedness not exceeding seven per centum of the assessed valuation of the property therein, provided that there shall not be included in the limitation of the indebtedness of such last described cities and towns the following classes of indebtedness, to-wit: Temporary loans, to be paid within one year, made in anticipation of the collection of taxes, and not exceeding one-fourth of the general revenues, bonds or other obligations already issued, or which may hereafter be issued for the purpose of acquiring, providing or constructing school houses, waterworks, and sewers; and obligations incurred and bonds issued for street or sidewalk improvements, where the cost of the same, in whole or in part, is to be assessed against the property abutting said improvements: Provided, that the proceeds of all obligations issued as herein provided, in excess of said seven per centum shall not be used, for any purpose other than that for which said obligations were issued. * * *"

With the bill are exhibited the detailed reports of the engineers upon the project for the construction and operation of the hydroelectric plant at Chalker's Bluff. These reports undertake to show the desirability of the construction, an important and emphasized feature of which is the probable net profits the sale of electric power for commercial purposes would produce in Dothan. Through demurrer for want of equity in the bill, and through the denial of the temporary injunction, the question of law raised and presented is whether this bond issue (authorized by the favorable result of the election thereon) is in good faith for a purpose within the exception, in favor of "waterworks," from the debt limit fixed by section 225 of the Constitution—the city of Dothan having a population of more than 6,000 and the indebtedness of the city being already sufficient to preclude the issue of these bonds, unless they are within the exception created in favor of the construction of "waterworks."

Farmer, Merrill & Farmer, of Dothan, for appellant.

The makers of the Constitution, in framing section 225 of the same, relative to cities of more than 6,000 population, clearly had in mind the distinction between debts and bonds for waterworks and for an electric light plant, and did not place electric light plants within the exception to constitutional limitations. 203 Ala. 401, 83 South. 170; 203 Ala. 300, 82 South. 550; 200 Ala. 472, 76 South. 404; 201 Ala. 237; 118 Ala. 166, 24 South. 395; 130 Ala. 154, 30 South. 477; 205 Ala. 386, 87 South. 375; 34 Ala. 335.

Reid & Doster, of Dothan, for appellees.

The proceedings attacked by this bill are authorized by sections 1260–1262, Code 1907, and the submission of the question in the shape it was submitted did not invalidate the election. 157 Ala. 328, 47 South. 703; 155 Ala. 479, 46 South. 638; 201 Ala. 245, 77 South. 835; 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166; 70 Wash. 486, 127 Pac. 104; 36 Fla. 229, 18 South. 677, 30 L. R. A. 540, 51 Am. St. Rep. 24.

McCLELLAN, J. [1] The municipalities of this state are authorized to construct and operate waterworks systems to supply wholesome water for municipal purposes and for the use of their inhabitants. They may locate their plants within or without their territories; and may issue bonds to provide funds for such purposes, as well as secure the payment of the bonds by mortgage on the systems or pledge of the revenues to be derived therefrom. Code, §§ 1260, 1261, 1262; Acts Sp. Sess. 1921, pp. 6–8.

[2, 3] The municipal right and function to provide water systems for towns and cities is expressly recognized in the Constitution. The municipalities are invested with a discretion, to the end that this public right may be exercised and this public function performed. Where such a power is conferred on a municipality, importing the discretion req-

uisite to its exercise, the courts are without right or authority to interfere, except for fraud or palpable abuse of the discretion thus committed. Oakley v. Atlantic City, 63 N. J. Law, 127, 44 Atl. 651; Ryan v. Paterson, 66 N. J. Law, 533, 536, 49 Atl. 587; 1 McQuillin on Municipal Corporations, §§ 376–9; 3 Dillon on Municipal Corporations (5th Ed.) pp. 2114, 2115. See White v. Mayor, etc., 119 Ala. 476, 481, 23 South. 999. In determining the wisdom, propriety, and contractual elements of a proposal to electoral approval or disapproval of a bond issue for an authorized purpose, the municipal government acts in a proprietary, not a legislative, capacity. Mayor, etc., v. Birmingham Water Co., 139 Ala. 531, 36 South. 614, 101 Am. St. Rep. 49; Bessemer v. Bessemer Water Co., 152 Ala. 391, 406, 44 South. 663; 1 Dillon, ubi supra, §§ 109, 110. Even when the municipal government acts in a proprietary, not legislative, capacity, it has been decided here that the courts cannot inquire into the motives of the members of the government, for the purpose of determining the validity of the government's acts, except, it is said, in cases of corruption. Cramton v. Montgomery, 171 Ala. 478, 482, 55 South. 122, reaffirming Albes v. Southern Ry., 164 Ala. 356, 365, 55 South. 327.

[4, 5] This rule may and does consist with that before stated, viz. that for the fraudulent exercise of a discretion reposed in a municipal government, or a palpable abuse thereof, the courts may intervene, when the jurisdiction to do so is properly invoked. It is also established here that municipal governmental action, of which a record is required to be made, cannot be shown by parol; that the records themselves (unless lost or destroyed) are the best and only evidence of such governmental action. Greenville v. Greenville Water Co., 125 Ala. 625, 643, 27 South. 764; Mobile County v. Maddox, 195 Ala. 336, 338, 70 South. 259. According appropriate effect to the rules just stated, the only source of information to determine whether a municipal government has fraudulently exercised or palpably abused its discretion, otherwise than as the result of corruption, is the records and proceedings of the governmental body, whose exercise of discretion is the object of attack. Manifestly members of such bodies are not competent to testify in definition or explanation of the purposes or motives that induced their participation in the action under inquiry.

[6] Bad faith is synonymous with fraud. 6 C. J. pp. 880, 881; Morton & Bliss v. Railway Co., 79 Ala. 590, 617. Error or mistake of judgment, in the exercise of a discretionary power, is not the equivalent of bad faith or fraud. In such circumstances, error or mistake of judgment consists with honest intention, or freedom from unworthy or unlawful motive or design. If honest intention or freedom from unworthy motive or design characterize the act of exercising a discretionary power, neither bad faith nor fraud is imputable.

[7] The abuse of discretion, justifying interference with the exercise of a discretionary power, "implies not merely an error of judgment, but perversity of will, passion, or moral delinquency." Williams v. Board of Education, 79 Kan. 202, 99 Pac. 216, 22 L. R. A. (N. S.), 584; Citizens' R. Co. v. Heath, 29 Ind. App. 395, 62 N. E. 107, 111; 1 C. J. pp. 372, 373. As recited in the statement of the case, the bill's design is to bring into question the good faith of the city government in the premises—this upon the theory that the act of the city government of Dothan in the premises was colorable only; that the purpose, a pretense only, was and is to avoid the already practically attained debt limit (Const. § 225), through a perversion of the discretion to provide and operate a water system, indebtednesses for which are excepted by section 225 from its debt limit restraint; and that the real, primary, major object sought by the city government is to create a water power at Chalker's Bluff to generate electric energy for sale to private consumers.

It is not even intimated that the price to be paid for the contemplated development will exceed its legitimate cost. Other than as the stated averments import, no fraud, actual or legal, nor abuse of discretion by the city government, is asserted. The issue which, in the absence of special demurrer, we treat (for the occasion only) as tendered by the bill's averments—supplemented, with perhaps undue favor to complainant, by the exhibit of plans, specifications, and explanatory reports—is not referable to the municipal power, in the abstract, to maintain and operate a water system. On the contrary, the attack upon this municipal action arises from, is alone predicated of, the collateral, yet important, consideration projected by the provision of section 225 of the Constitution excepting bond issues to provide "waterworks" from the debt limit therein prescribed. The contracted character of the issue tendered may be better defined by the observation that, if Dothan had been financially able to pay, in cash, the cost of the proposed development, there could be no legal objection based on section 225 of the Constitution to the execution of the design, whatever might be the excess energy, over present, or prospective needs, the hydroelectric plant would produce. The effort to impeach the good faith of the city government in the premises is, in effect, grounded in these averments of fact, associated with or amplified by the pleader's express allegation of his conclusion adverse to the good faith of the city government in the action taken, viz.: (a) That the proposed hydroelectric plant

will generate practically eight times the energy necessary, now or hereafter, efficiently to operate Dothan's waterworks system; (b) that the larger excess power generated or subject to employment will be sold for commercial purposes; and (c) that the cost of the contemplated plant, with transmission lines—a sum substantially equal to the amount of the proposed bond issue—will very greatly exceed the moderate cost of the energy (electrically generated by the present steam plant) to operate the water system at this or any other time. Consistent with the principles earlier stated in this opinion, the pleader's conclusion, denying the good faith of the city government in the premises, is to be measured by the facts to which it is referable for support.

[8] Aside from the debt limit provisions of the Constitution, there is, so far as we can discover, no restriction in our laws upon the municipality with respect to the cost or magnitude of an authorized municipal improvement or facility. That is left to the validly exercised discretion of the local government. This view is sanctioned by the fact that section 225 of the Constitution exempts "schoolhouses, waterworks and sewers" from the restraint imposed upon indebtedness ("obligations") by that section of the organic law. A fraudulent or grossly abusive exercise of the discretion in this respect could be thwarted by the courts (Avery v. Job, 25 Or. 512, 524, 525, 36 Pac. 293)—an invalidating circumstance, not averred or inferably suggested in the bill, the value of the proposed plant and transmission lines being substantially equivalent to the cost thereof under the plans and specifications made by the engineers. Hence neither the mere magnitude of the development nor the mere cost of it contributes anything toward impeaching the good faith of the city government in the premises.

Analogous support for this conclusion is afforded by Spaulding v. Lowell, 23 Pick. (Mass.) 71, 80, Shaw, C. J., writing, and by Kaukauna Co. v. Green Bay, etc., Canal, 142 U. S. 254, 273–276, 12 Sup. Ct. 173, 35 L. Ed. 1004. In the Spaulding-Lowell Case the primary question was whether the city had power, inferentially, not expressly, granted, to construct and maintain a "market house." The power was affirmed, and the means to provide a market house was held to be a lawful charge assessable upon the inhabitants of the municipality. A comparatively large sum was appropriated and applied to the purchase of a lot and the building of a two-story house, the first floor being devoted to market house purposes, and the second in part only (at the time of completion) to a seat for a municipal court, which, prior thereto, had been housed elsewhere at an annual municipal expense of $100. Lowell had, previously, a "commodi-

ous town house." The cost of the market house was $46,000. Later the county's courts occupied two-thirds of the second story of the structure. Among other things, it was contended for the plaintiff (taxpayer) that "the size of the market house erected by the defendants was extravagant and disproportionate to the population of the town," viz. 17,000 at the time. In reference to the contention indicated the court said:

"It was further contended, in the present case, that even if the town had authority to assess money for building a market house, yet that it would not justify the present tax, because a part of the building was appropriated to other subjects. If this had been a colorable act, under the pretense of exercising a legal power, looking to other and distinct objects beyond the scope of the principal one, it might be treated as the abuse of power, and a nullity. But we perceive no evidence to justify such a conclusion, in the present case. The building of a market house was the principal and leading object, and every thing else seems to have been incidental and subordinate. We cannot therefore say that it was such an excess of authority as to invalidate the acts, which they might rightfully do. As to the size and other circumstances of the building, if the accomplishment of the object was within the scope of the corporate powers of the town, *the corporation itself was the proper judge of the fitness of the building for its objects, and it is not competent in this suit to inquire whether it was a larger and more expensive building, than the exigencies of the city required.*" (Italics supplied.)

As appears, the court there affirmed, without qualification, that the discretion as to size and cost of the building was not subject to inquiry in that action, an action to recover taxes paid; that, if the scheme had been wholly void, the plaintiff would have been entitled to recover. It is evident, therefore, that the court found no warrant in the "size" and "expense" of the structure, even when contrasted with previous conditions, to conclude that fraud or abuse of discretion characterized the action of the municipal government in the premises.

In Kaukauna Co. v. Green Bay, etc., Canal, supra, a material question was the right, under eminent domain, to appropriate private property for the public use involved in the improvement of navigation by dams and canals, the legislation by the state (Wisconsin) retaining the right to surplus water or water power created by the improvement contemplated, with a view to the sale or lease of such excess water or water power for private consumption or use. This retention of control and right over and in the excess water or water power by the state gave rise to a question having features common, in a degree at least, to that now under consideration. The court, after citing several adjudications, approved the principle

and pronouncement in Spaulding v. Lowell, supra, and then made observations that are pertinent to the inquiry of good faith in the exercise of a vested discretion, and persuasive in the circumstances with which this court is now concerned. It was said:

"The true distinction seems to be between cases where the dam is erected for the express or apparent purpose of obtaining a water power to lease to private individuals, or where in building a dam for a public improvement, a wholly unnecessary excess of water is created, and cases where the surplus is a mere incident to the public improvement and a reasonable provision for securing an adequate supply of water at all times for such improvement."

After stating that no claim was made that the "water power was created for" commercial purposes, or that the structure was designed unreasonably to create an unnecessary head of water for the purposes of navigation at all seasons of the year, the court concluded as follows:

"So long as the dam was erected for the bona fide purpose of furnishing an adequate supply of water for the canal, and not a colorable device for creating a water power, the agents of the state are entitled to great latitude of discretion in regard to the height of the dam and the head of water to be created, and while the surplus in this case may be unnecessarily large, there does not seem to have been any bad faith or abuse of discretion on the part of those charged with the construction of the improvement. Courts should not scan too jealously their conduct in this connection, if there be no reason to doubt that they were animated solely by a desire to promote the public interests, nor can they undertake to measure with nicety the exact amount of water required for the purposes of the public improvement. Under the circumstances of this case, we think it within the power of the state to retain within its immediate control such surplus as might incidentally be created by the erection of the dam."

[9, 10] It is further insisted that the hydroelectric plant will generate a very large excess of energy over present or future needs of the municipality in the operation of the water system, and that the municipal design is to sell such excess for private employment and municipal gain. The averments of the bill are that the maximum energy required at this time is 550 horse power, now furnished by electricity generated by the steam plant, and that about 900 horse power is the maximum of any future requirement to operate the water system, however enlarged or expanded. That the city government has committed to it the discretion to choose or to change the character or source of energy to operate the water system cannot be questioned. The extent the government may go in exercising its discretion in respect of better service or more economical operation of the water system, or in reasonably anticipating the future requirements of a water system for a municipality that has already rapidly increased in population and material growth (a circumstance of which judicial notice is taken—Wight v. Wolff, 112 Ga. 169, 37 S. E. 395, 396; Clifton Iron Co. v. Dye, 87 Ala. 468, 471, 6 South. 192), is only limited by the exaction of good faith, to avoid fraud or palpable abuse of its discretion in the premises. Authorities supra.

When good faith in the exercise of a discretion of this character and in these circumstances is manifested, or when fraud or abuse of such discretion is shown, are necessarily chiefly matters of opinion, at least until the circumstances disclose such a departure from reason and relation as to shock the judgment, to indicate an improper motive. In so far as the amount of electric energy to be developed by this improvement —4,000 horse power—is a factor, it cannot be affirmed that bad faith or abuse of discretion characterized the city government's determination to construct a plant capable of generating that amount of energy. The excess over present needs is great; but, notwithstanding the pleader's prophecy that never more than 900 horse power will be required to operate any water system Dothan may maintain, who can affirm, with reasonable confidence, that in the prospective growth and development of Dothan much more energy may not be required efficiently to serve its water system? In the Kaukauna Case the court, while admitting the creation of an "unnecessarily large" surplus of water or water power, declined to attribute to the authorities any bad faith or abuse of discretion in the premises. Given a purpose to substitute electric power generated through water power for that generated by steam, it may well be that principles of economy require the creation of a water head greater than the minimum possible of creation at the same site. The cost, as well as the uncertainty of a constant supply, of fuel for the generation of steam, are factors that might reasonably contribute to the city government's determination in the premises. Again, the largely automatic character of the process of generating energy through a hydroelectric plant is likewise a consideration to which a government might attach influence in adopting that means for energizing its utilities.

[11] The point, among those before enumerated, more positively asserted as evidencing the perversion of the discretion in question, is that the municipality's major purpose and objective is to commercialize the excess energy for the financial benefit of the city. In McDonald v. Ward, 201 Ala. 245, 246, 247, 77 South. 835, this court adopted the pertinent doctrine of Bates v. Bassett, 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166, and Overall v. Madisonville, 102 S. W. 278, 31

Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433. The effect of that decision and of those just noted is that, if the primary purpose of the municipal government in exercising its discretion is to serve an authorized municipal purpose, the incidental excess product of the operation may be lawfully sold for private consumption. The converse, as a primary purpose, would require that the scheme be condemned as an abuse of discretion. The measure of the excess to be produced may, if great enough, afford indicia of abuse or of bad faith in the exercise of the discretion. What that measure of excess product should be to invite or justify the imputation of bad faith or abuse in exercising a committed discretion is not susceptible of definition. Treating an inquiry of like nature, it was said in U. S. v. Chandler, 229 U. S. 53, 73, 33 Sup. Ct. 667, 676 (57 L. Ed. 1063):

"If the primary purpose is legitimate, we can see no sound objection to leasing any excess of power over the needs of the government."

Manifestly the merely consequential creation of an excess does not indicate the entertainment of an illegal purpose, and, as pronounced in the Kaukauna Case, the creation of an "unnecessarily large" surplus does not justify a conclusion that bad faith or abuse of discretion characterizes the action of those in whom the discretion is reposed. The excess of electric energy to be produced by the plant at Chalker's Bluff is large, we may say unnecessarily large, when measured by present municipal needs. The municipality may, however, anticipate future expansion and increasing requirements in providing for energy to operate its water system that, presumably, must keep pace with the expanding necessities of a rapidly growing community. Those now charged with the duty and invested with the discretionary power to provide a water system may look forward to conditions that coming years may create, and build now to meet the anticipated requirements of that time. Invested with a sound discretion in the premises—a discretion that includes provision for a water system to serve in years to come —it cannot be affirmed, of or from the fact that a large surplus energy will be created by this development to be sold for private consumption, that the primary purpose inspiring this undertaking is not to improve the municipal water system through more economical, steadier, and greater motive power, nor that bad faith or abuse of the discretion reposed characterized the city government's action in the premises.

[12] Stress is laid in the brief for appellant upon the provisions of section 225 of the Constitution stipulating that the "proceeds of all obligations issued as herein provided" shall not be used for any other purpose than that for which they were issued. The whole object of this provision was to assure faithful devotion of the "proceeds" of the obligations to the purpose or object of their issuance. This provision is only operative upon the "proceeds" resulting from the effective issuance of the obligations contemplated. It is a limitation on the power of disbursement or application, not upon the power to create "obligations" for an authorized purpose—in this instance to improve a waterworks system.

[13] The separate elements, indicating the bill's theory that the scheme is a manifestation of a bad faith or abuse of discretion in the premises, have been separately considered. In combination they likewise fail to support or justify the charge of bad faith or abuse of discretion asserted in the bill. Presumably the city government intended and intends, in this matter, to observe, in good faith, the Constitution and laws of the state. That presumption is not dissipated by the averments of the bill. Bad faith cannot be imputed without substantial reason. The indebtedness to be incurred is to be devoted to a public, not a private, purpose, and the surplus of valuable energy, above the requirements of the water system, to be created is to be conserved from waste by sale of it to moderate the public burden that the construction of the hydroelectric plant must entail.

[14] The bill is without equity, as the court below decided. Since a bill without equity will not support a temporary injunction or invite its issuance, the court likewise correctly refused the temporary injunction prayed.

The decree in both cases is affirmed.

Affirmed.

All the Justices concur.