E. F. BARNES et al., Plaintiffs,

v.

CITY OF GADSDEN et al., Defendants.

No. 1091.

United States District Court
N. D. Alabama, M. D.

Aug. 19, 1958.

Arthur Burns, Gadsden, Ala., for plaintiffs.

Lusk, Swann & Burns and John A. Lusk, Jr., and Dortch, Allen & Meighan and W. B. Dortch, Gadsden, Ala., for defendants.

GROOMS, District Judge.

Jurisdiction of this Court is invoked under Title 28 U.S.C.A. §§ 1331 and 1343(3). Plaintiffs charge a violation of the due process, equal protection and privileges or immunities clauses of the Fourteenth Amendment to the Constitution of the United States, and Title 42 U.S.C.A. §§ 1981 and 1982. Relief is sought under Title 42 U.S.C.A. § 1983, and the Federal Declaratory Judgments Act, 28 U.S.C.A. §§ 2201 and 2202.

The cause was heard on the motions to dismiss, and on the merits pursuant to the stipulation of the parties.

### Findings of Fact.

1. The defendant, City of Gadsden, is a municipal corporation, the defendant, Greater Gadsden Housing Authority, hereinafter called the "Authority", is a body corporate organized and existing under the laws of the State of Alabama,[1] and defendant, Walter B. Mills, is Executive Secretary and Chief Administrative Officer of the Authority. The Authority has adopted plans for the redevelopment of two areas of the City of Gadsden known as the Birmingham Street Area and the North Fifth Street Area. These areas are slum and blighted areas. Plaintiffs are four Negroes who own property in the Birmingham Street Area.

2. Within the boundaries of the Birmingham Street Project Area to be redeveloped are 311 dwelling units occupied by approximately 355 Negro families, of which 54 are owner occupied and 259 are tenant occupied. There are 22 dwelling units occupied by approximately 23 white families, of which seven are owner occupied and 15 are tenant occupied. Fifty-eight or 17.4 per cent of the total units are owned by Negroes and 275 or 82.5 per cent by white people. Seventy-five per cent of all structures in the Area are substandard and incapable of being rehabilitated.

3. Within the boundaries of the North Fifth Street Project Area to be redeveloped are 11 dwelling units occupied by approximately 13 Negro families, of which five are owner occupied and six are tenant occupied. There are

---

1. Title 25, Code of Alabama 1940 and Amendments thereto.

31 dwelling units occupied by approximately 31 white families, of which eight are owner occupied and 23 are tenant occupied. Five or 11.9 per cent of the units are owned by Negroes and 37 or 88.1 per cent by white people. Eighty and nine-tenths per cent of all structures in the Area are substandard and incapable of being rehabilitated.

4. Acting under the Urban Redevelopment provisions of the Housing Act of 1949, as amended, 42 U.S.C.A. § 1450 et seq., the Authority has taken steps to obtain federal aid to assist in acquiring ownership of the property in these areas and for clearing same for redevelopment. A commitment for this purpose has been issued. The City of Gadsden has agreed to provide a portion of the costs as required by the Federal Act and as authorized by the laws of the State of Alabama, above referred to.[2]

5. The Authority is now engaged in obtaining the property located within the two areas by voluntary conveyances or by the power of eminent domain, and plans to clear the areas by demolishing the dwellings thereon, placing new streets and the required utilities, and otherwise improving the areas. When this has been accomplished, it will then sell the two areas to private individuals or redevelopers who shall be obligated to devote such property to the use as specified in the urban redevelopment plan for each area.

6. Before the Authority could obtain financial assistance from the Housing and Home Finance Agency, Urban Renewal Administration, comprehensive and detailed plans were required. These have been prepared, investigation made, the plans approved, and the financial assistance made available by the commitment referred to. Each of these plans contains an anti-racial covenant reading as follows:

"(C) Anti-Racial Covenant—No covenant, agreement, lease, convey-ance or other instrument shall be effected or executed by the Housing Authority, or by the purchasers or leasees from it, or any successors in interest of such purchasers or leasees, whereby land in the Project Area is restricted upon the basis of race, creed, color, or national origin in the sale, lease of occupancy thereof."

The plans were approved by the City of Gadsden, whose only function is to provide its one-third of the net cost of the redevelopment and slum clearance. The execution of the plans will be under the direction of the Authority.

7. Many years ago, the City of Gadsden created a City Planning Commission. This Commission prepared a comprehensive outline of future municipal development known as the "Gadsden Plan." This plan includes subdivision regulations and zoning ordinances that cover and apply to all of the territory within the City.

8. Plaintiffs do not challenge the desirability of slum clearance and rehabilitation of substandard areas such as are here involved. They say that because they are Negroes and because the private, as well as the public, housing market in Gadsden is a racially discriminatory one and is based on the policy, custom and usages of residential segregation, they are unable to bargain for their shelter on equal terms with others, and, therefore, need the protection of this Court with respect to any housing program in which public officials participate and make possible.

9. Whether by choice motivated perhaps by the gregarious nature of the peoples of the Negro race, by custom accepted or acquiesced in by the members of that race, or by their exclusion from other areas by racially restrictive covenants in leases and conveyances, or by a combination of these factors, there have

2. Opinion of the Justices, 254 Ala. 343, 48 So.2d 757, holding that the Acts providing for redevelopment of slum areas are constitutional. Gen.Acts 1949, p. 713.

See also 1955 Act, now Title 25, § 105 et seq., Supp. to Alabama Code 1940, covering Urban Renewal Projects.

developed racially segregated residential areas in the City of Gadsden. The City, however, has adopted no ordinance or resolution based upon a policy, custom and usages of initiating, encouraging, enforcing and perpetuating residential segregation of the Negro and white races within its corporate limits. The City has neither by resolution, ordinance, nor other official action adopted any plans intended to or that will have the effect of rezoning the Negro or white residential areas within its limits and restricting the areas which will be available to the plaintiffs and members of their class for future residential purposes, nor has the City adopted any resolution, ordinance or zoning regulation restricting any area so as to make the same unavailable to the plaintiffs and members of their class for residential purposes. The only zoning ordinance of the City applicable to residences applies to all persons and is based on types of dwellings and not on types of occupants or ownership.

10. The City of Gadsden has neither instituted nor caused to be instituted any proceedings for the purpose of acquiring title to the lands of the plaintiffs or other members of their class. The City does not propose to institute or cause to be instituted any such proceedings. The City of Gadsden, by no official act, has made any attempt to require the plaintiffs to purchase houses in the North Fifth Street Area or forbidden them either to occupy or purchase houses in the Birmingham Street Area.

11. The plans of the Authority are for the elimination of substandard and inadequate housing, regardless of ownership or occupancy, through the clearance of slums and blighted areas in which private enterprise will be encouraged to serve as large a part of the total need as possible. The plans do not include low-rent housing programs administered or assisted by the Public Housing Authority or other public agencies.

12. No evidence has been presented that the Authority, or the City, has included in the plan for the redevelopment of the Birmingham Street Area that sales by private purchasers or private redevelopers will be restricted to white people only or that the plaintiffs and members of their class will not be permitted to purchase same solely because of race or color. There is no evidence that by any plan for redevelopment and sale only plaintiffs or members of their class will be permitted to own or occupy the lots in the North Fifth Street Area. The evidence likewise fails to reveal that the Authority has any plan for sales of dwellings in the involved areas after redevelopment in contravention of the Anti-Racial Covenant hereinabove quoted. As to each such contention, the evidence and its tendencies are to the contrary.

## Conclusions of Law

The Court concludes from an analysis of plaintiffs' complaint, evidence and arguments that their claim for relief is grounded primarily on the apprehension that when the two areas are cleared and rehabilitated and sold to private interests under legitimate restrictions as to use that plaintiffs and members of their class will not be able to purchase property in the Birmingham Street Area because of their race or color, Dorsey v. Stuyvesant Town Corp., 299 N.Y. 512, 87 N.E.2d 541, 14 A.L.R.2d 133, certiorari denied 339 U.S. 981, 70 S.Ct. 1019, 94 L.Ed. 1385, and that if they purchase homes in the North Fifth Street Area they will be racially segregated in that area, and, therefore, they should be delivered from the apprehension of this possible dilemma by injunctive relief, preventing the carrying out of the plans which, they insist, constitute a scheme and design for initiating, enforcing, extending and perpetuating racial segregation in residential areas of Gadsden in violation of their constitutional rights. Otherwise, they see no escape from their anticipated predicament once the properties are sold to private interests; and they are fearful in that event that their last state will become worse than their first.

■ The proposed clearance in the Birmingham Street Area will eliminate a largely racially-segregated section. The Authority is prohibited from imposing racially-discriminatory restrictions upon resale. Plaintiffs insist that these Anti-Racial Covenants are mere window dressings, and that the only alternative to that of enjoining the carrying out of the plans, is to require the Authority to include a provision in its conveyances granting to those now residing in that area a prior right of purchase. It would appear needless to observe that if such right is granted and the present residents choose to exercise it, resegregation rather than desegregation will result, since, as noted, practically the entire area is now occupied by Negroes. In any event, the law does not compel integration, whatever the guise under which relief is sought. It only prohibits enforced segregation. Cohen v. Public Housing Administration, 5 Cir., 257 F. 2d 73.

■ It will be presumed that the City of Gadsden, its officers and agents, will act in good faith in discharging their duties and in observing the constitutions and laws, state and federal. Bad faith cannot be imputed. Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16; Jewel Tea Co. v. City of Troy, 7 Cir., 80 F.2d 366; Royal Oak Drain District, Oakland County, Mich. v. Keefe, 6 Cir., 87 F.2d 786; Davis v. Arn, 5 Cir., 199 F.2d 424; Clarence C. Walker Civic League v. Board of Public Instruction, 5 Cir., 154 F.2d 726.

In the last-cited case, a county school board ordered a split session in a Negro school during the war emergency to make children available for agricultural labor for the winter farming season. Following the cessation of hostilities, certain Negro citizens, parents of the children, filed a bill for an injunction. Relief was denied. On appeal the Court held that in the absence of any showing of the probable continuance of the practice, it would be presumed that the public officers concerned would do their duty and return to the normal operation of the schools in effect before the occurrence of the emergency.

■ The presumption that public officers will in good faith discharge their duties and observe the law is a very strong presumption, 20 Am.Jur. 174, and will prevail until overcome by clear and convincing evidence to the contrary. National Labor Relations Board v. Bibb Mfg. Co., 5 Cir., 188 F.2d 825.

If the Court assumes that private interests will restrict sales in the Birmingham Street Area to white people and the North Fifth Street Area to colored people, such sales would not be actions under color, authority, or constraint of state law, nor would they be the performances of functions of a governmental character. Dorsey v. Stuyvesant Town Corp., supra; Johnson v. Levitt & Sons, Inc., D.C.S.D. Pa., 131 F.Supp. 114.

In Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161, 3 A.L.R. 2d 441, the Court said:

"Since the decision of this Court in the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. *That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.*" (Emphasis supplied.)

■ The action of a governmental agency acting within its authority will not be controlled or revised by injunction. Brammer v. Housing Authority, 239 Ala. 280, 195 So. 256. The City, the Authority, and defendant Mills were acting within the authority of law in making the contract for the undertaking here challenged.

■ The exercise of jurisdiction under the Federal Declaratory Judgments Act is discretionary and not compulsory. Smith v. Massachusetts Mut. Life Ins. Co., 5 Cir., 167 F.2d 990; Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct.

1173, 86 L.Ed. 1620. The remedy by injunction is likewise discretionary. Peay v. Cox, 5 Cir., 190 F.2d 123. This case is void of evidence that would invite the Court's discretion in either particular. Judgment will be entered in favor of the defendants with their costs.