Quillie THOMPSON, on behalf of himself and all others similarly situated, Plaintiff,

v.

The HOUSING AUTHORITY OF the CITY OF MIAMI, FLORIDA, a public corporation created and existing under the laws of Florida, Defendant.

Civ. No. 66–144.

United States District Court
S. D. Florida,

Miami Division.

Feb. 21, 1966.

Montague Rosenberg, Miami, Fla., Attorney for the Plaintiff.

Scott, McCarthy, Steel, Hector & Davis, Miami, Fla., Attorneys for the Defendant.

FULTON, District Judge.

This cause is before the Court on plaintiff's motion for a preliminary injunction enjoining defendant from proceeding further with the construction of certain public housing projects.

Jurisdiction of this Court is invoked under Title 28 U.S.C.A. Section 1343(3) and (4). Plaintiff charges that defendant is violating the due process, equal protection and privileges and immunities clauses of the Fourteenth Amendment to the Constitution of the United States, and the provisions of Title 42 U.S.C.A. Sections 1981 and 1982, by constructing public housing projects on sites located in a Negro neighborhood, which sites were purposely selected for the purpose of effecting de facto segregation. Relief is sought under Title 42 U.S.C.A. Section 1983 and the Federal Declaratory Judgments Act, 28 U.S.C.A. Sections 2201 and 2202. The action is designated as a class action.

At the hearing (held seven days after commencement of the action), defendant filed its verified answer denying the averments of the complaint and demanding judgment dismissing the complaint and for an appropriate adjudication that defendant is fully complying with all applicable provisions of the Constitution, laws and regulations.

Upon hearing oral testimony in open Court, and considering the evidentiary exhibits submitted, upon the issues made by the complaint and answer, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The defendant, The Housing Authority of the City of Miami, Florida, is a public body corporate, created in 1937 under the laws of Florida.

2. The defendant maintains and operates 3543 public housing units located

at various sites within its jurisdictional territory, which have been provided by means of Federal financial assistance obtained from the Public Housing Administration.

3. Prior to the effective date of Title VI of the Civil Rights Act of 1964, and prior to the effective date of the Public Housing Administration regulations implementing Executive Order 11063, the defendant voluntarily adopted the policy that all eligible families of low income shall be given opportunity for housing on an equal basis in all projects operated by this Authority.

4. The official policy of non-discrimination adopted by defendant has been strictly complied with in all respects. Each and every applicant, regardless of race, color or national origin, has complete freedom of choice to select any of the public housing projects in which the applicant wishes to reside. None of defendant's public housing projects are operated on a segregated basis; on the contrary, all housing units are operated on a non-segregated basis. It is undisputed that all public housing facilities presently owned by the Housing Authority are operated under a policy of non-discrimination which affords to any eligible applicant the opportunity to lease or rent any housing unit suitable to the needs or desires of the applicant, regardless of the location of the housing project.

5. In 1962, the defendant selected a number of sites for construction of comprehensive public housing projects to provide housing for low income families displaced by the County's urban renewal program and the North-South Expressway. Approximately 2600 families, predominantly Negro, are required to be relocated by the urban renewal and expressway programs. The area primarily affected by these programs (which receive Federal financial assistance) is known as the Miami Central Negro District. No public housing units are located in the Central Negro District. The sites selected by the Housing Authority for its comprehensive public housing projects cover a large area located Northwesterly of the Central Negro District and some considerable distance therefrom. The area in which the public housing projects are being constructed was inhabited by both White and Negro residents at the time of selection of the sites. It was designated by the County as the "Northwest Transition Area". The official 1960 census tracts establish that the area was populated by both races. It appears that the area presently is populated by both White and Negro residents, although it probably is predominantly inhabited by Negro residents.

6. The sites for defendant's comprehensive public housing projects were approved by the Public Housing Administration in February, 1963, after inspection, study and review, and pursuant to public hearings and conferences with leaders and representatives of the Greater Miami Negro Community. It was determined by the Public Housing Administration, including the Chief of the Intergroup Relations Section, that the sites selected by defendant conformed to the criteria established by Public Housing Administration Regulations. Thereafter, over a period of time, the defendant acquired title to the approved sites, and a construction contract awarded and construction of the public housing projects commenced prior to the filing of this action. When completed, the housing units will be made available to eligible applicants on an equal basis, without regard to race, color or national origin.

## CONCLUSIONS OF LAW

1. This cause presents for determination the factual issue whether the Housing Authority of the City of Miami, Florida, is fostering de facto segregation in connection with the comprehensive public housing projects presently under construction.

2. Plaintiff did not appear as a witness at the hearing. The evidence produced on behalf of plaintiff failed to prove any of the averments of the complaint. Defendant affirmatively established by its evidence that no discrimination is practiced in respect to any public

housing projects, and that the sites upon which the comprehensive public housing projects are presently being constructed were selected on the basis of community needs and in accordance with criteria fixed by the Public Housing Administration, and that the defendant was not in any way racially motivated, nor was any discrimination involved, in the selection of the sites or the approval thereof by the Public Housing Administration.

■■ 3. The main thrust of plaintiff's claim for relief and argument in support thereof is grounded primarily on the apprehension that de facto segregation will result from the construction of public housing units in a predominantly Negro area, for the reason that only Negroes will make application to reside in such housing units. Plaintiff contends that public housing located in any area which is predominantly Negro, of itself, constitutes de facto segregation, and the good faith of the Housing Authority in selecting such sites and its policy of non-segregation is immaterial. If this argument is accepted, then it is equally true that the location of public housing units in any predominantly White area would also constitute de facto segregation. This would leave the Housing Authority in a position where public housing could be provided only in areas where the population of White and Negro residents is mathematically even. It is not shown that any such areas exist in the Greater Miami area. The sites here involved were located in an area which was populated with both White and Negro residents, when selected by the Housing Authority and approved by the Public Housing Administration, and still has residents of both races. It is undisputed that the selection and approval of the questioned sites was motivated solely by community needs, and was accomplished in conformity with Federal criteria, and with the full concurrence of the representatives and spokesmen of the Negro community whose interest in preventing discrimination is a matter of common knowledge.

■■ 4. A presumption of regularity supports the official acts of public officials and, in the absence of clear evidence to the contrary, Courts presume they have properly discharged their official duties. United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131. The presumption that public officials will in good faith discharge their duties and observe the law is a very strong presumption, and will prevail until overcome by clear and convincing evidence to the contrary. Barnes v. City of Gadsden, 174 F.Supp. 64 (D.C.N.D.Ala. 1958), affirmed 268 F.2d 593 (5th Cir. 1959).

■ 5. A housing authority is vested with broad discretion in the selection of sites necessary and desirable for low rent housing facilities it desires to construct, and the selection of sites will not be interfered with or controlled by the Courts unless it is shown that the selection was made in bad faith, beyond the power conferred by law, or in violation of the law. Varandoe v. Housing Authority of City of Doerun, 221 Ga. 467, 145 S.E. 2d 493; Glover v. Birmingham Trust & Savings Co., 239 Ala. 423, 195 So. 259, In Re Housing Authority of City of Salisbury, 235 N.C. 463, 70 S.E.2d 500.

6. In Sealy v. Department of Public Instruction of Pennsylvania, 252 F.2d 898 (3rd Cir. 1958) the Court said:

"The plaintiffs have bottomed their case squarely on the issue that they have been discriminated against and segregated because of their race by the proposed location of the new junior high school. Unless this issue be proved a United States court has no authority to intervene in a domestic difficulty as to where a school should be located in a township. The location of schools assuredly is one for state school authorities and local schools boards; for state, not national courts, unless there be a deprivation of rights guaranteed by the Fourteenth Amendment. * *

"* * * There is no evidence of discrimination or of segregation by reason of race. Segregation or

discrimination is not shown by the mere fact that there are presently more Negro students in the lower or southern segment of Darby Township than in its upper or northern segment. Standing alone such a factor will not support an inference of discrimination or segregation."

7. The exercise of jurisdiction under the Federal Declaratory Judgments Act is discretionary and not compulsory. Smith v. Massachusetts Mut. Life Ins. Co., 167 F.2d 990 (5th Cir.); Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620. The remedy of injunction is likewise discretionary. Peay v. Cox, 190 F.2d 123 (5th Cir.). Title 28 U.S.C.A. Section 1343 authorizes redress and equitable relief where deprivation of equal rights exists or the protection of civil rights 's required. The record in this action is void of evidence that would invite the Court's discretion or justify injunctive relief in either particular.

Judgment will be entered denying plaintiff's motion for a preliminary injunction.