(No. 24751.— ▇▇▇▇▇▇▇▇)

THE PEOPLE *ex rel.* Illinois Armory Board, Petitioner, v. EDWARD J. KELLY, Mayor, *et al.* Defendants.

*Opinion filed September 8, 1938.*

OTTO KERNER, Attorney General, WEYMOUTH KIRK-LAND, and ROY D. KEEHN, for petitioner.

BARNET HODES, Corporation Counsel, (ALEXANDER J. RESA, J. HERZL SEGAL, and WALTER V. SCHAEFER, of counsel,) for defendants.

Mr. JUSTICE JONES delivered the opinion of the court:

By leave granted, relator has filed in this court a petition praying a writ of *mandamus* against the mayor, city clerk and city comptroller of the city of Chicago, commanding them to execute and deliver to the Illinois Armory Board a deed conveying certain premises in the city of Chicago under the terms of an ordinance donating the premises to relator as a site for an armory. The premises are specifically described, and lie between East Pearson street on the north, East Chicago avenue on the south, and North Seneca street on the west.

The ordinance was enacted under the terms of an act approved June 25, 1937, amending section 100a of article 5 of the Cities and Villages act. (Ill. Rev. Stat. 1937, chap. 24, par. 65.99a.) Section 100a, as so amended, authorizes the corporate authorities of cities and villages: "To convey, sell, donate, lease or rent any real estate or lands heretofore acquired, to the State or any agency thereof, to be used as a site for an armory for the National Guard or Naval Militia, and to acquire real estate or lands for such purposes, provided, however, that any such city or village shall have no power to divert any gift, grant or devise from the specific purpose designated by the donor."

The original jurisdiction of this court is invoked because of an emergency arising from the fact that funds of the United States now available for armory construction may not be available if construction be not begun in the near future. Petitioner's status as an agency of the State,

and the emergency, are not questioned. The right to the relief sought is based upon the act of 1937.

The petition alleges the land in controversy is owned by the city and is not and has not been restricted to any specific purpose by any donor and the conveyance sought will not constitute a diversion from any specific purpose. The answer of defendants admits the land is owned by the city of Chicago, but alleges the destruction of the deed and records of the recorder's office in the Chicago fire of 1871. It sets out a diligent search to ascertain the terms of the conveyance and a failure to find any information, except an entry on an ante-fire tract book of the Chicago Title and Trust Company, showing that Michael Diversey, William Lill and their respective wives, conveyed the land to the "Water Commissioners" by an instrument dated June 3, 1852, recorded in the recorder's office of Cook county on June 8, 1852, in book 50, page 293. It appears from the tract books of the Chicago Title and Trust Company that Diversey and Lill were the last private owners of the land. The answer claims defendants do not have and cannot obtain any information as to whether the deed contained any restriction, and prays strict proof of the allegations of the petition. Defendants claim that the burden is upon petitioner to establish there was no restriction in the deed; that it is impossible to make such proofs and that, therefore, the petition must be dismissed. *People* v. *Douglas,* 281 Ill. 478, and *Hyman* v. *Bayne,* 83 id. 256, are cited in support of that contention. Those cases hold that where there is an exception in the enacting clause of a statute, it must be negatived by the party relying on the statute, but if the exception appears in a subsequent clause, the other party must allege and show it in order to avoid the operation of the statute. The statute in controversy here consists of a single section. The claim is that the enacting clause embraces the entire section containing such a clause. This court held to the contrary in *Great Western Railroad Co.* v. *Hanks,* 36

Ill. 281. We have never departed from the rule there laid down that exceptions in the latter part of the first section of a statute are not a part of the enacting clause. In that case, as in this, the statute in controversy consisted of a single section. We there said, quoting Chitty on Pleading, page 223: "Where there is an exception in the enacting clause of a statute, the plaintiff, suing under it, must show that the defendant is not within the exception; but if there be an exception in a subsequent clause, that is a matter of defense, and the other party must show it, to exempt himself from the penalty." It is to be observed that Chitty follows this language with this further statement: "And where an act of parliament in the enacting clause creates an offense, and gives a penalty, and in the same section there follows a proviso containing an exception, which is not incorporated in the enacting clause by any words of reference, it is not necessary for the plaintiff, in suing for the penalty, to negative such an exception." It being incumbent on defendants to show a restriction in the deed, and they having admitted their inability to do so, the petition will not be dismissed for the reason assigned.

Defendants urge that under section 13 of the city's special charter "water fund property" held by the city cannot be diverted for uses other than those pertaining to the water supply of the city. The section mentioned provides: "All funds derived from the sale of said water loan bonds, or from water rents, or otherwise, for the water works of said city, shall be exclusively used and appropriated by said board to the objects and purposes pertaining to the water supply of said city herein specified, nor shall the same, or any part thereof, be used by said board or by said city for any other purpose." It is contended that the word "funds" is used as embracing physical property, including real estate. While, under certain conditions, real estate may be regarded as part of a fund, in the ordinary use of that word such a meaning is not inferred. It ordinarily means money or

negotiable instruments readily convertible into cash, and has been defined as property of every kind when such property is contemplated as something to be used for payment of debts. (*Illinois Christian Missionary Society* v. *American Christian Missionary Society,* 277 Ill. 193; *Broadway Bank of St. Louis* v. *McGee Creek Levee and Drainage District,* 292 id. 560.) Section 13 obviously uses the word "funds" in the sense of money. There is no logical way to construe it otherwise. Diverting a fund into real estate, and then disposing of the real estate to circumvent the statute, would, of course, be unlawful, as suggested by defendants, but no such situation is present here. Nor is there anything in the provisions of the Cities and Villages act pertaining to municipal finances which tends to show the real estate in controversy is a part of the funds mentioned in section 13 of the special charter.

Defendants claim that the acquisition or donation of land for the construction of an armory for the State militia is not a corporate purpose of a city or village, and that the enabling statute contravenes section 9 of article 9 of the constitution of this State. That portion of the constitutional provision invoked reads: "For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes." Although framed in permissive language it constitutes a limitation upon the legislative department, prohibiting the enactment of laws conferring upon municipal corporations power to assess and collect taxes for any other than corporate purposes. (*Wetherell* v. *Devine,* 116 Ill. 631; *Sleight* v. *People,* 74 id. 47.) Defendants urge that the constitutional provision applies to acquiring, or the disposition of property already owned by a municipality, as well as to the levy of municipal taxes. It is argued that if valuable property which may be used for corporate purposes or sold to pay corporate obligations, is given away for or devoted to a non-corporate purpose, the taxpayer who must contribute to the corporate

debts is as certainly affected as if taxes were levied directly for a non-corporate purpose. Petitioner does not seriously question the correctness of that proposition, but claims that the donation of the property is for a corporate purpose.

What constitutes a corporate purpose has been before this court for determination on several occasions. From those decisions it is apparent that each case must be decided from its own facts and circumstances, and the question is oftentimes not free from difficulty. A corporate purpose has been defined to be some purpose which is germane to the objects for which the corporation was created, or such as has a legitimate connection with that object and a manifest relation thereto. *Kocsis* v. *Chicago Park District,* 362 Ill. 24; *Wetherell* v. *Devine, supra; People* v. *Dupuyt,* 71 Ill. 651.

In *Board of Supervisors* v. *Weider,* 64 Ill. 427, bonds of the county were issued under an enabling act to aid in the construction of the State Reform School at Pontiac in that county. This court held that the bonds and the tax as levied to pay them were illegal, because the tax would violate the constitutional requirements of equality and uniformity, and that the erection of the reform school was not a corporate purpose. We pointed out that the reform school was a penitentiary on a small scale, a necessary evil, which no town, alive to its prosperity and well being, would desire to have within its limits; and that it would be detrimental to the neighborhood, prevent the erection of valuable buildings and discourage a desirable population. That case is neither controlling nor persuasive here.

The earliest holding in this State on what is a corporate purpose is found in *Taylor* v. *Thompson,* 42 Ill. 9, (1866.) In that case it was said that a tax for a corporate purpose may be defined to mean a tax to be expended in a manner which shall promote the general prosperity and welfare of the community which levies it. It was held that a statute authorizing the levy of a town tax to pay bounties to per-

sons who should thereafter enlist or be drafted into the army of the United States, after an affirmative referendum, was for a corporate purpose and not unconstitutional. The injuries and disadvantages of a draft to a community were enumerated, and the benefit of their avoidance by the tax was held to be for the common good. In other words, the local benefits to the community brought the tax within the definition of a corporate purpose.

In *Burr* v. *City of Carbondale,* 76 Ill. 455, it was held that bonds issued and a tax levied for their payment in aid of the Southern Illinois Normal University were for a corporate purpose, and the local benefits to the municipality were emphasized and contrasted with the evils mentioned in the *Weider case.* Still later, in *Supervisor and Assessor of Hensley Township* v. *People,* 84 Ill. 544, a statute authorizing a bond issue to aid in securing the location of the Industrial University at Urbana, was upheld on the authority of the *Burr case* as being for a corporate purpose.

Defendants rely largely on our holding in *City of Chicago* v. *Chicago League Ball Club,* 196 Ill. 54, that the power to organize, equip and maintain organized forces, and the control thereof, rests in the State; that the Governor has sole power to direct the militia to be employed to aid in execution of the law; and that it is not within the power of the General Assembly to confer upon cities or villages independent or primary power to employ the militia in quelling riots or disturbances. We also there held that municipalities have a duty to prevent and suppress riots, routs, affrays, disturbances and disorderly assemblies. Militia dispatched to the scene of any disorder and violence is a contribution of the State to the local agencies in the governmental duty of protecting life and property and maintaining the supremacy of the laws. To the extent that the powers with which a city is invested are sufficient to enable it to discharge this duty, the expense is that of the city. The militia, when thus in a city, are subordinate to the civil

authorities so far as directing the work to be done or the result to be attained.

It is to be noted that in donating funds for the location of a normal school or an industrial university, the municipality bears no further expense and has no voice in the management of either institution. In those respects a donation for an armory to aid in the prevention of disorder and the preservation of the public peace is more closely related to local corporate purposes than donations for either of the other institutions owned and exclusively managed by the State at its own expense. It is manifest that locating an armory in a municipality may, because of the readiness with which local militia may be employed, save large losses of life and property, as well as corporate expense, which might result from a delay in transporting and quartering troops from another city. Furthermore, cities in this State are liable to the owner of property injured or destroyed in a riot of twelve or more persons. (Ill. Rev. Stat. 1937, chap. 38, par. 518.) The location of an armory and a military force in a city naturally tends to prevent such a liability, which must, of course, be met from corporate funds. As was pointed out in the case of *Taylor* v. *Thompson, supra,* the words "corporate purpose" should not receive a narrow or rigid construction. One of the purposes for which local governments are organized is to preserve the peace and good order of the community, and to prevent and suppress riots, affrays and disorder therein. The donating of funds or property for an armory in a city is in furtherance of that corporate function, and thus is for a corporate purpose. The statute in controversy does not contravene the constitutional provision invoked. Each of the parties has cited cases from other jurisdictions, but our interpretation of the constitutional provision in controversy by prior adjudications furnishes a sufficient basis for deciding the issues, and it is unnecessary to resort to other authorities.

The writ of *mandamus* is awarded as prayed for, commanding the defendants Edward J. Kelly and Peter J. Brady, as mayor and city clerk, respectively, of the city of Chicago, to execute, on behalf of the city, a deed to the Illinois Armory Board, conveying all right, title and interest of the city of Chicago in the premises described in the petition, in accordance with the ordinance of the city passed November 10, 1937, and commanding Robert B. Upham, comptroller of the city of Chicago, to deliver such deed to the Illinois Armory Board.

*Writ awarded.*