28 So.2d 177

STATE ex rel. AUSTIN et al. v. CITY OF MOBILE et al.

I Div. 278.

Supreme Court of Alabama.

Dec. 12, 1946.

468

W. O. MacMahon, Jr., intervener, pro se.

Harry Seale, of Mobile, for appellees.

S. P. Gaillard, Jr., of Mobile, for appellants.

Wm. N. McQueen, Atty. Gen., and Mac-Donald Gallion, Asst. Atty. Gen., for the State.

Thos. E. Twitty, of Mobile, for State Department of Docks & Terminals, amici curiæ.

STAKELY, Justice.

W. G. Austin, Jr., as a citizen and taxpayer and in behalf of the other taxpayers and citizens of Mobile, Alabama, filed a bill in equity in the Circuit Court of Mobile County against the City of Mobile and the members of its Board of Commissioners to restrain them from paying to the State of Alabama, Department of State Docks and Terminals, the sum of $350,000. Attached to the bill of complaint and made a part thereof is a copy of a resolution adopted by the Board of Commissioners of the City of Mobile on October 1, 1946, providing for payment of $350,000 to the State of Alabama, Department of State Docks and Terminals.

W. O. MacMahon, a citizen and taxpayer of Mobile, filed a petition to intervene as a party complainant. The court entered an order allowing the intervention. The respondents demurred to the bill of complaint including the amendment thereof separately filed by the intervener. The court sustained the demurrer. Hence this appeal.

The resolution in substance recites that the State of Alabama, Department of State Docks and Terminals has determined upon a program to expand the system of Alabama State Docks situated in the City of Mobile by constructing additional wharves and docks on the west shore of the Mobile River between the present area of the State Docks and the North side of Dauphin Street, all at an estimated cost in excess of $4,000,000; that this program will be a very substantial benefit to the City of Mobile and to its industrial enterprises, its merchants and its citizens generally and will greatly increase the trade and commerce carried on and through the Port of Mobile and will provide a substantial improvement to its harbor.

The resolution then recites that it is within the powers and functions and to the interest of the City of Mobile to develop or aid in the development of its port and to improve and extend sea walls, dikes, levees and embankments within the limits of the city for protection against streams, rivers, waters, floods, tides and storms and in the improvement of the drainage system and the system of sanitary and storm sewers within the city and in the improvements of streets, the construction of viaducts and the elimination of traffic hazards and grade crossings; that the expansion program of the Alabama State Docks will include many of the improvements above enumerated and within a large section or area of the City of Mobile.

The resolution then shows that in order to induce the State of Alabama to engage in the expansion program, the City of Mobile offered to the state to grant to it the financial aid of $350,000, as set out in the resolution.

After reciting as aforesaid the purposes of the grant, the resolution provides that in consideration of the facts recited and of the great public benefit which the city and its citizens will derive from the program and for other good and valuable considerations the city grants said sum to the state "in payment and satisfaction of the commitment of the City of Mobile made to the State of Alabama in inducement of the development of the Port of Mobile through the said expansion program of Alabama State Docks system." The resolution directs the mayor to pay over this sum "out of monies in the General Fund of the City not otherwise appropriated upon obtaining appropriate assurances from the State that the funds will be used to apply toward cost of additional lands or facilities embraced in said expansion program."

It is urged that the City of Mobile cannot lawfully participate in the enlargement and expansion program of the State Docks by contributing the payment contemplated by the resolution because (1) Section 94 of the Constitution of 1901 prohibits such payment, (2) there is no express statutory authority for such payment and (3) although the City of Mobile could itself build the seawalls, wharves and docks, viaducts, sewer, drainage and other improvements, contemplated in the program, the City of Mobile cannot aid the state in so doing since title

to the facilities and the management thereof will vest in the State of Alabama. Two further contentions are advanced by the intervener, which we shall refer to later. We consider all the contentions unsound.

Section 94 of the Constitution of 1901 reads as follows: "The legislature shall not have power to authorize any county, city, town, or other subdivision of this state to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise."

██ Under the resolution it is contemplated that payment be made to the State of Alabama, Department of Docks and Terminals. Beyond controversy under the Mobile Port Amendment to Section 93 of the Constitution of 1901, the proposed payment will be made to an agency of the State of Alabama, which means payment to the State of Alabama itself. State Docks Commission v. Barnes, 225 Ala. 403, 143 So. 581. The payment will therefore not be in any sense to either an association or a corporation, within the meaning of Section 94 of the Constitution of 1901, because an association or corporation within the meaning of Section 94 of the Constitution of 1901 has reference only to private associations and corporations. Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516; Garland v. Board of Revenue, 87 Ala. 223, 6 So. 402. Section 94 of the Constitution of 1901 is not applicable.

In discussing the powers which a municipal corporation possesses and which it can exercise this court has often 'used these words: " 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.' * * *." Cleveland School Furniture Co. v. City of

Greenville, 146 Ala. 559, 41 So. 862, 863; City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325. The City of Mobile has the specific power and authority under § 470, Title 37, Code of 1940, to "Construct and maintain wharves and construct buildings and other improvements on wharves and collect wharfage dues thereon."

The legislature in § 513, Title 37, Code of 1940, has, among other things, specifically delegated the following powers to municipalities in the field of public improvements. "All cities and towns in this state may design, or cause to be designed, contract for, and execute, or cause to be executed, the construction of * * * and also for the constructing, acquiring, improving and extending of sea walls, dikes, levees and embankments within the limits of the municipality for protection against streams, rivers, waters, floods, tides, seas, and waves, in such manner * * * as such city or town may prescribe. * * * The construction or reconstruction of sanitary sewers or sanitary sewer systems * * * [improving any street, avenue, alley, highway or other public place] * * * the construction or reconstruction of storm water sewers, main trunk storm sewers and storm water sewer systems * * *."

We think it is indisputable that the city has broad powers with reference to the construction of wharves, docks, sea walls, dikes, levees, embankments against streams, rivers, waters, floods, etc.; broad powers with reference to the construction of sanitary and storm sewers for improvement of public health and drainage in its area; also broad powers in connection with the improvement of its streets and in the construction of viaducts and in the elimination of traffic hazards in grade crossings in its area. All of these things are among the objectives in the expansion program of the State Docks for which the grant of money is contemplated, as shown by the resolution by the commissioners.

██ The appellants do not appear to question seriously the power and authority of the City of Mobile to expand and develop its seaport facilities. What they do earnestly contend is that lacking specific statutory authority therefor, the City of

Mobile is not authorized to make a contribution to the expansion of seaport facilities when the title to the property is not in the City of Mobile, even though the property is located within the city limits. However we think the power and authority of the City of Mobile to make the grant is amply sustained by the decisions of this court. In the case of Carey v. City of Haleyville, 230 Ala. 401, 161 So. 496, 497, suit was brought to enjoin the city and its governing officials from issuing general obligation bonds and paying the proceeds to the County Board of Education to defray a part of the cost of constructing a school building located in the city. The complainant in that case made the same objections that are being made by the appellant in this case, that is that the building would be owned by the county board and that the control of the school building would not be lodged with the city. This court, among other things, said:

"As to these broad provisions for the erection of public schoolhouses, no question of taxation is attached thereto, as is the case under section 2314, Code, nor is there any indication that the matter of title to the project was of any controlling importance. * * *

"True, the municipality may not have title to the school building, and it may be under the control of the county board (Gen. Acts, Ex.Sess.1933, p. 81, amending School Code 1927, § 132), and the affairs of the school be under like control. School Code 1927, section 86. But considerations of this character would deny to the municipal corporation the power to donate any funds to the betterment of the schools located therein, as its public schools, by reason of the population limitation of 2,500, are under the supervision of the county board. Yet the inhabitants of Haleyville receive the benefit and enjoy the privileges of these schools in their midst; and the mere fact that another and independent agency of the state controls their affairs is no reason for a denial of the right of the citizens through their municipal authorities lending aid in support of such institutions.

*     *     *   .   *     *     *

"No sound reason appears why such municipalities may not devote surplus proceeds of revenue for the erection or maintenance of such schools located within their corporate limits. The inhabitants receive the benefits, though along with others in territory surrounding."

The holding in Carey v. City of Haleyville, supra, was approved in the case of First Nat'l. Bank of Birmingham v. Walker County Board of Education, 243 Ala. 576, 11 So.2d 297, 299. In that case the question arose in an action for mandamus whether the Town of Cordova had the right to donate certain funds to the county for the erection and maintenance of a school building in the Town of Cordova, which building and lot had been conveyed to the Walker County Board of Education. This court said, "The town had the legal right to make the donation without exacting any obligation to return it."

In the case of State ex rel. Radcliff v. City of Mobile, 229 Ala. 93, 155 So. 872, 876, this court held that the City of Mobile had the express statutory authority to construct docks, etc., and had the further power to borrow money from the Federal government and under the plan in that case to use this money in the construction of a cold storage plant, a grain elevator and other facilities on property leased from the State Docks Commission, the facilities to be under the control of the State Docks Commission. In this last mentioned case the court stated that inasmuch as the City of Mobile had at that time already exceeded its debt limit, "The city cannot make the lease price a charge against the general revenue of the city, unless the same can be paid from current funds." It will be noted that in the case at bar, the financial grant of the City of Mobile to the state in the amount of $350,000 is to be paid from current funds, specifically to be paid "out of monies in the general fund of the City not otherwise appropriated." Thus the Radcliff case is supporting authority for the grant of financial aid by the City of Mobile to the expansion of the State Docks, provided such aid "can be paid from current funds."

It should be noted that § 2018 of the Code of 1923 is the source of municipal power upon which the Radcliff case was decided.

472

This section provided that cities "May erect and maintain wharves * * *." That statute did not authorize a city to secure a loan from the Federal Works Administration with which to build port facilities on property of the State Docks Commission nor to lease a site for said facilities from the State Docks Commission and agree to pay rentals therefor and at the same time permit the city under a lease-purchase contract to lease back the facilities to the state so that the state could manage and operate them and acquire title thereto. So when this court held the plan valid, it necessarily so held under the implied powers which had their origin in those powers expressly conferred by the aforesaid statute. The whereabouts of the legal title to the facilities and the right to operate them were not the matters of importance—these things being in another agency of the state—but rather the benefits and advantages accruing to the city and its citizens.

There are analogous cases in other jurisdictions. For example in the case of Vrooman v. St. Louis, 337 Mo. 933, 88 S.W. 2d 189, it was held that the City of St. Louis could donate its funds to the United States to acquire and construct a natural park within the city. In the case of Sacramento v. Adams, 171 Cal. 458, 153 P. 908, it was held that the city could donate land to the State of California in contemplation that the land would be used by the state for constructing public buildings thereon. In the case of Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960, the Supreme Court of the United States held that a deed from the city to the United States for the purpose of providing a site for a military reservation was supported by adequate consideration to the city in the form of general public benefits and therefore valid. And in the case of People ex rel. Illinois Armory Board v. Kelly, Mayor, et al., 369 Ill. 280, 16 N.E.2d 693, it was held that a donation of funds or property by the city for a state armory within the city, was in furtherance of the corporate function and valid.

The additional charge is made by the intervener that out of the proposed grant of $350,000 the amount of $100,000 is to be used by the state to pay to the City of Mobile as the purchase price for the Municipal Docks, property of the City of Mobile, a price which according to the intervener, represents only a fraction of its true value. We do not consider that the validity of such a transaction is before us. There is no charge of fraud or corruption in the present case. On the contrary the bill of complaint sets forth a plan of expansion and improvement as shown by the ordinance adopted by the Board of City Commissioners which we deem valid and within the discretion of the municipal authorities of Mobile. When a municipal corporation undertakes a project which is within its legal powers and the project is within the discretion of the municipal authorities, the courts are without authority or right to interfere except for fraud or corruption. Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16; Van Antwerp v. Board of Com'rs of City of Mobile, 217 Ala. 201, 115 So. 239. "According appropriate effect to the rules just stated, the only source of information to determine whether a municipal government has fraudulently exercised or palpably abused its discretion, otherwise than as the result of corruption, is the records and proceedings of the governmental body, whose exercise of discretion is the object of attack." Pilcher v. City of Dothan, supra [207 Ala. 421, 93 So. 19]. We have sufficiently discussed the resolution of the City Commissioners.

It only remains to consider the further contention of intervener that Judge Bates, who rendered the decree from which this appeal has been taken, should have recused himself. It is claimed that Judge Bates should have recused himself because he was formerly a member of the City Commission of Mobile and further that before becoming a Judge, he had represented the city as special attorney and had been paid a substantial fee for his services. Without considering whether such an inquiry is proper on an appeal of the kind before us (Riley v. Wilkinson et al., 247 Ala. 231, 23 So.2d 582), we do not hesitate to say that there is nothing to show that Judge Bates has such an interest in or relationship to the matter before the court as to require him to recuse himself. § 6, Title 13,

Code of 1940; Moulton v. Byrd, 224 Ala. 403, 140 So. 384; Riley v. Wilkinson et al., supra.

. We conclude that the City of Mobile has the power and authority to make the grant of $350,000 to the State of Alabama, Department of State Docks and Terminals, as contemplated in the resolution adopted by the Board of Commissioners of the City of Mobile and, therefore the lower court was correct in sustaining the demurrer to the bill of complaint.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.