48 So.2d 757

## OPINION OF THE JUSTICES.
### No. 119.

Supreme Court of Alabama.
Oct. 25, 1950.

Ernest E. Parker, of Gadsden, for petitioner.

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., opposed.

These questions arise under Act No. 491, General Acts of 1949, approved August 30, 1949. This Act enables communities in Alabama to acquire, clear and provide for the redevelopment of their slum areas by availing themselves of the Federal financial assistance offered under Title I of the Housing Act of 1949, Public Law 171, 81st Congress, approved July 15, 1949 [42 U.S.C.A. § 1451 et seq.] As in other communities throughout the country, many of our communities are sorely in need of slum clearance and urban redevelopment programs.

I am advised that the housing authorities in Mobile and Montgomery have already entered into contracts for financial assistance with the Federal Government for plans and surveys in preparation of slum clearance and urban redevelopment projects under Title I. I am also advised that authorities in other municipalities in Alabama contemplate making similar applications at an early date. As you may know, there are over 40 of such authorities now organized in this State.

The most significant feature of the financial assistance provided under the Federal Act is found in the provisions dividing the inevitable loss occasioned in any slum clearance and urban redevelopment program between the Federal Government and the participating local community. Two-thirds of such loss will be borne by the Federal Government and the remaining one-third will be borne by the local community. The Federal contribution will be made in the form of capital grants and the local contribution will be made through local grants-in-aid. Such local grants-in-aid may consist of cash grants, donations of land, demolition and removal of slum structures, site improvements, the provision of parks, playgrounds and public buildings or facilities of direct benefit to the project.

The Honorable Chief Justice and Associate Justices of the Supreme Court of Alabama.

Honorable Sirs:

Under the provisions of Title 13, Section 34, Code of Alabama, 1940, I respectfully request your opinion on the important constitutional questions set forth herein.

Municipalities in which the slum clearance and urban redevelopment projects will be located will commit themselves to provide the local grants-in-aid, as described above, in order to obtain Federal capital grants for such projects. All plans for the redevelopment of slum areas must be approved by the city council or other govern-

ing body of the community in which the projects are to be situated.

Before such commitments are made and before the acquisition of any slum properties is undertaken, I deem it in the public interest to obtain your opinion on the following important constitutional questions:

1. Does the taking of land in a slum area by a housing authority through the exercise of the power of eminent domain and the disposal thereof at its use value in accordance with an approved redevelopment plan for such slum area, as authorized by enabling Act No. 491 (General Acts of Alabama, approved April [August] 30, 1949) violate Article 1, Section 23 of the Constitution of Alabama, where such taking and disposition are for the purpose of effectuating a redevelopment project as authorized by said Act No. 491 (and as contemplated by Title I of the Housing Act of 1949, Public Law 171, 81st Congress, approved July 15, 1949), such redevelopment project consisting of (a) the acquisition of a slum area, (b) the clearance of the slum area by demolition and removal of buildings and improvements, (c) the installation, construction or reconstruction of streets, utilities and other site improvements in such slum area essential to the preparation of sites therein for uses in accordance with the approved redevelopment plan for such slum area and (d) making the land so acquired and prepared available for redevelopment by private enterprise or public agencies by the disposal thereof through sale or lease by the housing authority at its use value for uses in accordance with the approved redevelopment plan?

2. Does the use of public funds by the State, cities, counties, towns and other subdivisions of the State for the provision of local grants-in-aid, such as cash grants, donations of land, demolition and removal of slum structures, site improvements, the provision of parks, playgrounds and public buildings and facilities, in aid of slum clearance and urban redevelopment projects, as authorized by said Act No. 491 (and as contemplated by Title I of said Federal Act), violate Article 4, Section 94 of the Constitution of Alabama?

3. Does the disposal at use value through sale or lease by a housing authority of land in a slum area which has been acquired by eminent domain, cleared and prepared for reuse in accordance with an approved redevelopment plan, as authorized by said Act No. 491 (and as contemplated by Title I of the Federal Act), violate Article I, Section 22 of the Constitution of Alabama, where such use value may be less than the cost of acquiring, clearing and preparing such land for redevelopment?

4. Does the obligation imposed by a housing authority upon purchasers or lessees of land in a slum area which has been cleared and prepared for reuse, to comply with such covenants and conditions as the housing authority may determine are necessary to carry out the purposes of the approved redevelopment plan, as authorized by said Act No. 491 (and as contemplated by Title I of said Federal Act), violate Article 4, Section 44 of the Constitution of Alabama?

Respectfully yours,

James E. Folsom
Governor

To Hon. James E. Folsom, Governor,
    State of Alabama,
        Montgomery.

Sir:

In response to your inquiry filed with us on October 4, 1950, we submit:

The Act of August 30, 1949, No. 491, to which your inquiry refers, undertakes to confer on a housing authority, then or thereafter established under Title 25, Code of Alabama, additional powers and authority. So far as material to the constitutional questions directed to us, we note that the housing authority so established is given the power to condemn certain blighted areas which are slums, as defined in it, in order to abolish health and safety hazards, and in co-operation with the United States, the city or county creating the authority is authorized to provide funds for just compensation therefor. The area thus condemned and

the slums cleared must be put to a redevelopment plan, which plan may be for a public use or it need not be for such use, but may be for a private use. And in doing so, the city or county and the United States stand to lose some of the money they are authorized to advance to the authority for the purpose of making just compensation and clearing the slums.

Your inquiry No. 1 is in substance whether the condemnation of the slum area for the specified purpose is taking private property for a private use without the consent of the owner, and whether the right of eminent domain is thus used for the benefit of an individual or association prohibited by section 23 of the Constitution. Your inquiry No. 2 is whether a contribution of funds by a city or county to the authority for such purpose operates as a loan of credit or a grant of public money to an individual, association or corporation as prohibited by section 94, Constitution.

## Section 23, Constitution.

With respect to the housing authority provided for in Title 25, Code, we had occasion to apply the words *"public use"* as employed in section 23, *supra*. The question was whether it required the land so condemned to be actually used by the public after condemnation, or whether it was for the public benefit there declared or a public use. Brammer v. Housing Authority, 239 Ala. 280, 195 So. 256. The property so condemned under that power by the housing authority was to be rented to tenants with low income. But they were individuals and would not use the property as such tenants for the public. The Court took notice of the distinction between the *public use* of property and the use of it for the public benefit. In that situation, the public was not to *use* the property, but the Court held that the combined act of removing an unhealthy and unsafe condition, and erecting sanitary, comfortable dwellings, with less fire hazard, and with the obligation to rent them only to tenants of low income, served a wholesome public purpose and was a *public use* and not a *private use* under section 23, *supra*. There was noted a difference among the authorities as to whether a pub-

lic use is satisfied if it is for the benefit of the public. This was a safety measure under the police power. Little other public benefit could result. The Court declared its purpose to accept the view that the project contemplated by the housing authority act, set out in Title 25, Code, should be treated as a public use justifying condemnation under section 23 of the Constitution. The Court referred to 18 Am.Jur. 663, section 37. In the text of that authority, we find the following: "The courts have properly pointed out that almost any legitimate business enterprise, indirectly to some extent, may be regarded as of benefit to the public, and that an indefinite field is opened up when the doctrine is accepted that public benefit alone is sufficient to make the use a public one, warranting the exercise of the power of eminent domain." See, also, 29 Corpus Juris Secundum, Eminent Domain, § 31, p. 823 et seq.

The Court in the Brammer case, supra, was not dealing with an effort to extend the words "private use" in section 23 of the Constitution to apply to such a broad indefinite field whenever there is a public benefit to result, though vague, indefinite and restricted. We appreciate the contention that this would be the opening up of a field for the application of section 23, supra, which we do not wish to do, and was not discussed in that aspect in the Brammer case, supra. The case of Aldridge v. Tuscumbia, C. & D. Railroad Co., 2 Stew & P. 199, there cited with approval, referred to condemnation by a railroad. The legislature may delegate the authority to condemn to public utilities, which are in essence private enterprises, but whose operations are for the use of all the public who have a legal right to its benefits which are not vague or indefinite or restricted. Alabama Interstate Power Co. v. Mt. Vernon, 186 Ala. 622, 65 So. 287; Mt. Vernon-Woodberry Cotton Duck Co. v. Alabama Interstate Power Co., 240 U.S. 30, 36 S.Ct. 234, 60 S. Ct. 507; Columbus Waterworks Co. v. Long, 121 Ala. 245, 25 So. 702; Jones v. New Orleans R. R. Co., 70 Ala. 227. Other illustrations are stated in 18 Am.Jur. 665. See, also, Sadler v. Langham, 34 Ala. 311, 330. We think the Brammer case, supra,

intended to apply the principle to that phase of the police power there contemplated.

The theory that Act No. 491 does not violate constitutional restrictions such as section 23, supra, has been approved by decisions of many courts construing such an act as this, holding that the exercise of the police power in clearing a blighted area, such as is described in the Alabama law, supra, is a public use of that area. Belovsky v. Redevelopment Authority et al., 357 Pa. 329, 54 A.2d 277, 172 A.L.R. 953; Schenck v. City of Pittsburg et al., 364 Pa. 31, 70 A. 2d 612; Zurn v. City of Chicago et al., 389 Ill. 114, 59 N.E.2d 18; People, ex rel. Tuohy v. City of Chicago et al., 399 Ill. 551, 78 N. E.2d 285; Redfern v. Board of Commissioners of Jersey City et al., 137 N.J.L. 356, 59 A.2d 641; In re Opinion to the Governor, R. I., 69 A.2d 531; General Development Corp. v. City of Detroit, 322 Mich. 495, 33 N.W.2d 919; Bader Realty Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489; Amalgamated Housing Corp. v. Kelly, 193 Misc. 961, 82 N.Y.S.2d 577. See, also, 172 A.L.R. notes 967, 970 et seq.

■ Our conclusion is that the plan contemplated by Act No. 491, supra, in connection with Title 25, Code, shows that character of public benefit resulting from its observance which should be classified as a public use on the same theory which influenced us in so declaring with reference to Title 25, supra, before the adoption of the Act No. 491, supra, and does not violate section 23 of the Constitution.

## Section 94, Constitution.

■ Referring to section 94, supra, we note that its purpose and effect have been declared by our cases in respect to certain situations. Garland v. Board of Revenue of Montgomery, 87 Ala. 223, 6 So. 402; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Board of Revenue of Mobile County v. Puckett, 227 Ala. 374, 149 So. 850; Beeland v. Kaufman, 234 Ala. 249 (25), 174 So. 516; State ex rel. Austin v. City of Mobile, 248 Ala. 467, 28 So.2d 177. In substance those cases hold that one purpose of section 94, supra, was to prevent a city or county from lending its credit or granting public funds to a railroad or other private enterprise on the assumption that such project would be beneficial to the commercial interests of the city or county (although the railroad is a public utility); but that it did not prohibit a grant of public money to discharge a moral obligation of a substantial sort though not legally obligated to do so; nor to make such grant to a corporation organized as a public agency to carry out some enterprise which it may in its public capacity have undertaken by authority of law for the use and benefit of the public (the housing authority under Title 25, Code, was thought by us to be such a corporation, In re Opinion of Justices, 235 Ala. 485, 179 So. 535): nor are exactions of contributions under our social security law to provide for unemployment compensation and also for the aged.

■ The obligations which may be assumed by a city or county and the donation of the necessary money to accomplish the purposes of Act No. 491, supra, in co-operation with the United States, which supplies the greater part of it, are not, in our opinion, a landing of credit nor a grant in violation of section 94, supra, because it is to a public corporation exercising a public function as an agency of the city or county acting by virtue of its police power. Housing Authority of County of Los Angeles v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794; Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656; Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N.W. 451, 291 N.W. 100; Allydonn Realty Corp. v. Holyoke Housing Authority, 304 Mass. 288, 23 N.E.2d 665; People ex rel. Tuohy v. City of Chicago, et al., 399 Ill. 551, 78 N.E.2d 285. We think that such plan as contemplated in Act No. 491, supra, is not prohibited by section 94 of the Constitution.

We therefore answer inquiries numbered 1 and 2 in the negative.

## Section 22, Constitution.

■ No special privilege is granted in violation of section 22, Constitution. The land is not to be sold or let to private persons except upon the basis of the value of the right granted. Although the authority may lease or sell the land to individuals, such

transaction shall require the purposes of the Act to be accomplished. Even if some individual does receive more benefit than others, that is only incidental and does not affect the public nature of the transaction as a whole. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516; Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112; Edwards et al. v. Housing Authority of City of Muncie et al., 215 Ind. 330, 19 N.E.2d 741; Cremer et al. v. Peoria Housing Authority et al., 399 Ill. 579, 78 N. E.2d 276; Kruse et al. v. Peoria Housing Authority et al., 370 Ill. 356, 19 N.E.2d 193; People ex rel. Tuohy v. City of Chicago et al., 399 Ill. 551, 78 N.E.2d 285.

We answer inquiry No. 3 in the negative.

#### Section 44, Constitution.

We see no delegation of legislative power in violation of section 44 of the Constitution. Brammer v. Housing Authority, 239 Ala. 280, 195 So. 256.

We therefore answer inquiry No. 4 in the negative.

Respectfully submitted,

s/ JOEL B. BROWN
ARTHUR B. FOSTER
J. ED LIVINGSTON
THOMAS S. LAWSON
ROBERT T. SIMPSON
DAVIS F. STAKELY,
Associate Justices.